[Sac. No. 937. Department Two.—December 16, 1903.]

CATHERINE MANN, and ESTHER DURGAN, Respondents, v. SUSAN A. MANN et al., Appellants; D. L. MANN, Intervener.

ESTATE FOR LIFE OF GRANTOR—CONSTRUCTION OF CONTRACT—LEASE—GRANT.—A contract between a mother and her son, by which, in consideration of past care and attention, and on condition that the son shall supply her with necessaries and give her such care as her age and condition may require, "so far as he is able to do so," she granted to him all of her personal property, and also all of her interest in a homestead entry, with the right to cultivate or rent the same during her life, and to prove up as sole heir to the land after her death, is not a lease, for want of a certain

rent, and for want of validity as a lease of agricultural land, but is to be construed as making to the son a grant of a freehold estate for the life of the mother.

Id.—Grant in Fee by Tenant for Life—Termination of Life Estate —Grant by Patentee—Adverse Possession—Prescriptive Title. —Where the tenant for life, claiming to be the absolute owner of the homestead under the contract, granted an estate in fee to one of the plaintiffs, under whom the other plaintiff claims, the possession of the grantee of such estate, after the termination of the life estate, by the death of the mother, became adverse to the grantee of the mother, who had herself obtained a patent for the homestead and granted it to the testator of the defendants, and where such adverse possession was accompanied by the payment of all taxes upon the lands and was continuously hostile for the statutory period, it ripened into a prescriptive title, which the law will protect as against the defendants.

APPEAL from a judgment of the Superior Court of Tuolumne County and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

F. W. Street, for Appellants.

J. P. O'Brien, for Respondents.

McFARLAND, J.—This is an action to quiet title to certain agricultural lands. Judgment went for plaintiffs, and from the judgment and an order denying a new trial defendants appeal.

The plaintiff Esther Durgan claims an undivided half of the land in contest under a conveyance from the plaintiff Catherine Mann, executed a short time before the commencement of this action, and her right to recover depends upon the right of said Catherine. The court found that plaintiffs have title to the premises by prescription, and that "for more than five years before the commencement of this action the plaintiff Catherine Mann has been in the open, visible, notorious, adverse, hostile, exclusive, continuous, and uninterrupted possession of all the lands, premises, and property described in the amended complaint herein"; that during said time she has "occupied and claimed said land and premises as of her own sole, separate, and indefeasible estate, and ex-

clusive of any other right or interest''; and that during said time she had paid all taxes on the land. These findings are fully justified by the evidence, which shows, indeed, that for more than twenty years continuously before the bringing of the action said plaintiff, and her predecessor, Daniel L. Mann, had held adverse possession of the land under claim of ownership, unless they were estopped from asserting such adverse holding by reason of an alleged relation of landlord and tenant.

The facts upon which this alleged estoppel is based are these: On September 13, 1876, the land here in contest was United States public land, and one Sarah A. Mann had filed a homestead entry thereon, and on that day she executed to her son, Daniel L. Mann, the following instrument: ''This agreement, made this 13th day of September, A. D. 1876, between Sarah A. Mann, the party of the first part, and Daniel L. Mann, the party of the second part: Witnesseth: That for the consideration of the care and attention heretofore given by my son, the said Daniel L. Mann, and for the further consideration hereinafter set forth, the said party of the first part hereby grants to the party of the second part, all of her personal property, and hereby authorizes him to take immediate possession thereof; also all of my interest of, in or to the homestead right of the party of the first part of, in or to the land described in the certificate of homestead entry, No. 1903, of the receiver of the U. S. land office at Stockton, California, giving to my said son the right to cultivate or rent the same or any part thereof during my lifetime, with full power at my death to prove up on the same as my sole heir to said land, reserving herein the right to occupy and reside in the house on said land so long as I may live. This grant of the right to cultivate and lease the land during my lifetime is given on condition that my son shall supply the necessaries of life for me so long as I shall live, and give me such care as my age and condition may require, so far as he is able to do so. In witness whereof,'' etc. Upon the execution of this instrument, Daniel went into possession and inclosed the land by a fence, and held it continuously until 1890, undoubtedly believing that the land would be his absolutely after the death of his mother, and claimed it as his own. On December 17,

1890, Daniel, by deed, conveyed the land in fee to his wife, Catherine Mann, plaintiff herein, who, as before stated, held and claimed the same absolutely under such deed. But Sarah A. Mann, notwithstanding her attempt by said instrument of September 13, 1876, to give Daniel the right to prove up on the homestead and get the government title after her death, herself made final proof on the homestead entry, and on May 20, 1882, received a United States patent, conveying said land to her. Afterwards, on October 12, 1885, she executed a deed to John F. Mann, purporting to convey him in fee all of said land. Afterwards, in December, 1894, John F. Mann died testate, and devised said land to the defendants in this action, who claim under him. Afterwards, on October 4, 1892, Sarah A. Mann died.

Now, the contention of appellant is, that under the foregoing facts the relation of landlord and tenant continuously existed from the date of the instrument of September 13, 1876, to the commencement of this action; that such relation existed between Daniel and his mother, Sarah, and afterwards her grantee, John F. Mann, from 1876 to 1890, when he conveyed to the plaintiff Catherine; that such relation existed continuously between Catherine, on the one side, and Sarah A. Mann until her death, and John F. Mann and his devisees, the appellants, on the other, from the date of the deed to Catherine and her possession until the commencement of this action; and that, therefore, Daniel and Catherine, who are assumed to have been tenants, could not assert any claim to the land adversely to the other parties above named, who are assumed to have been the landlords. In our opinion, this position is not tenable.

Most of the decisions touching the relation of landlord and tenant deal with a lease of the usual character,—that is, where there has been created an estate for years, called the "term"; and the instrument here in question did not create an estate of that character. It was not a lease. It was substantially a conveyance of a freehold estate for life, and the relation of the parties thereto was that of grantor and grantee —not that of landlord and tenant. It is true that where in a deed conveying an estate for life there is an express reservation of rent, with a covenant by the grantee to pay it, the in-

strument may for some purposes be treated as a lease. But by the instrument in question here an estate for life is created, in consideration of past kindness of the grantee to the grantor, and of the hazy and uncertain implied promise of the grantee that during the life of the grantor he will supply the latter with necessaries, and, "as far as he is able to do so," will give her such care as her "age and condition may require." In this promise there is no such element of certainty as is necessary to constitute rent, which is an essential part of a lease. What effect a failure of the grantee to comply with the condition named would have had upon his estate is not a question involved in the case. Moreover, it is provided in section 717 of the Civil Code that no lease of land for agricultural purposes for a period of more than ten years shall be valid. The instrument in question, therefore, could have no validity as a lease. It was valid as a conveyance of a freehold estate for life, or it had no validity whatever; and when the life estate terminated by the death of Sarah A. Mann, the remainderman or reversioner had the immediate right to possession, which he must have asserted within the statutory period of limitations. The plaintiff Catherine, having taken a conveyance in fee from the tenant for life, was not estopped from claiming adversely to respondents, or their testator, *after the termination of the life estate.* In *Jackson* v. *Harsen,* 7 Cow. 323,[1] Woodward, J., speaking for the court, having said that so long as the life estate continued there could be no adverse holding by the tenant for life as against the reversioner, proceeds as follows: "When that ceased, the right of entry accrued. If, after the termination of the life estate the reversioner permits the representatives of the tenant for life to hold, claiming as their own, beyond the time limited for bringing actions, the right to recover is gone. I consider this proposition as settled law." In *Saunders* v. *Hanes,* 44 N. Y. 365, Gray, C., says: "It may be stated as a general proposition that when the tenant for life has conveyed his estate in fee the possession will become adverse from his death (3 Washburn on Real Property, 30)," and repeats the language used in *Jackson* v. *Harsen,* above quoted. In *Miller* v. *Ewing,* 6 Cush. 34, Shaw, C. J., speaking for the court, says: "The

[1] 17 Am. Dec. 517.

right of the reversioners accrued at the death of the tenant for life in 1833, . . . and the statute of limitations begins to run from that time," citing *Tilson* v. *Thompson,* 10 Pick. 359. In *Gernet* v. *Lynn,* 31 Pa. St. 94, the court says: "The statute of limitations does not run against parties in remainder until after the death of the tenant for life who has aliened the fee." In *Miller* v. *Miller,* 129 Ill. 630, the court, speaking of a purchaser from the tenant for life, say: "The possession of the purchaser is not, and cannot be, during the continuance of the life estate, adverse to the remainderman or reversioner, so as to set the statute of limitations running against such remainderman or reversioner; but after a life estate falls in, the possession will be adverse as to a remainderman or reversioner." There are many other authorities to the same point, but the foregoing are sufficient to be here cited. Our conclusion is, that respondents were not estopped from asserting the adverse possession found by the trial court, and that therefore the judgment was right. These views are determinative of the case, and there are no other phases of the discussion of counsel which call for special notice.

The judgment and order appealed from are affirmed.

Lorigan, J., and Henshaw, J., concurred.