[Civ. No. 15834.   Second Dist., Div. Two.   July 15, 1947.]

COOPERATIVE BUILDING MATERIALS, INC. (a Corporation), Respondent, v. ROBBINS & LARKEY (a Copartnership) et al., Appellants.

Ben M. Kochman and Crider, Runkle & Tilson for Appellants.

Hanna & Morton and Joseph W. Pierce for Respondent.

WILSON, J.—L. F. Dow Company, Incorporated, not a party to this action, was the general contractor for the construction of concrete floors and foundation walls of warehouse buildings at Herlong, California, under a contract with the United States Engineers Division of the War Department of the United States Government. On September 8, 1944, the Dow Company entered into a subcontract in writing with appellants Robbins & Larkey, a copartnership, whereby the latter agreed to furnish, erect, pour and construct certain concrete work in connection with the floors and foundation walls covered by the Dow contract. Appellant Massachusetts Bonding and Insurance Company executed its bond in writing whereby it agreed to pay the claims of all persons furnishing labor, materials, equipment and supplies and all things necessary to perform and complete the work covered by the subcontract with Robbins & Larkey. Thereafter, Robbins & Larkey entered into a written agreement with respondent reading as follows:

"Co-operative Building Materials, Inc.
6009 Santa Monica Boulevard
Los Angeles,     38,     California
September 9, 1944

"Walter Larkey and William Robbins
Los Angeles, California

"In connection with your contract with L. F. Dow Company for placing concrete floor and foundation walls in warehouse buildings at the Army Depot in Hurlong, California, we propose to furnish the following work and service:

"1. Deliver to the job site two standard mixermobiles* and one 65-ton, 4-compartment batching plant,† and remove same at conclusion of the contract. 2. Furnish operators and fully maintain said mixermobiles and batching plant. 3. Provide laborers for emptying cement sacks into our mixermobile skips.

"It is understood that cement will be furnished to us, piled beside our mixermobile skips. You are to receive the concrete in our tower hopper.

"Our charge for the above outlined work and services shall be $15,120.00 (Fifteen thousand One Hundred-twenty Dollars), and the use and control of two dump trucks, completely operated and maintained for hauling rock and sand from batch plant into mixermobile skips for mixing the concrete to be placed in floor slabs which we understand to be ten thousand cubic yards, more or less, for six (6) warehouses. In addition we shall receive the sum of $1.512 per cubic yard of concrete to be mixed for wall forms and all other concrete required but not included in floor slabs. We are to receive payments weekly to cover all items of labor or wages for men employed by us at the job and shall receive all balances due in addition to labor and wages, twice monthly as work progresses.

"It is anticipated and understood that the complete pouring of the concrete covered by your contract shall be completed within approximately thirty days; however, we agree to fur-

---

*"A mixermobile is described as a complete truck-mounted-concrete-mixing-and-elevating equipment. It loads itself, mixes its concrete and has the ability to lift it to higher elevations in a tower which is constructed on the machine.

†"A batching plant is a plant consisting of overhead compartments for the assembling of rock and sand. Directly below is a gathering hopper in which the material is weighed according to a specification, and the hopper in turn will again empty at street level into a truck for transporting it. It is a device for measuring specific aggregates in the specification of concrete."

nish and maintain the above equipment for a period not to exceed fifty days. Thereafter, we shall receive a standby charge of $150.00 per day for each day the equipment is retained by you, said period of time to commence on September 9, 1944.

"Dated at Los Angeles,      CO-OPERATIVE BUILDING
California, this 11th day of      MATERIALS, INC.
September, 1944      By W. Ball, Pres.

"The above proposal, conditions and terms are hereby accepted:
Walter F. Larkey
Wm. M. Robbins"

Respondent completed its contract, and extra work in addition, about November 15, 1944. Robbins & Larkey refused to pay respondent anything whatsoever for its work, hence this action to recover. Judgment for $16,854.45 was rendered in favor of respondent against the copartnership, Robbins & Larkey, the individuals composing the partnership, and Massachusetts Bonding and Insurance Company, from which they have appealed.

Robbins & Larkey resist payment on the contention, as alleged in their answer, that their contract with respondent is invalid and unenforceable for the reason that the equipment was "leased" to them by the contract and that respondent failed to file with the Office of Price Administration for this district its application to establish the reasonable price therefor in compliance with the Maximum Price Regulations, sections 1399.1 to 1399.15, of the Office of Price Administration, and that unless and until the reasonable price and ceiling price is fixed by the Office of Price Administration for this district on the equipment, respondent is barred and estopped from setting up, asserting or recovering any amount on said "leased" equipment.

Appellants maintain that the contract between respondent and Robbins & Larkey is within the terms of the Emergency Price Control Act of 1942 (50 U.S.C.A. App. § 901 et seq.) and of the regulation adopted pursuant to that act. Respondent contends, as found by the court, that it is an independent contractor for the performance of construction work, having agreed to furnish "work and service" with equipment and labor for the completion of the work that it agreed to perform, and therefore the contract is not within the terms of the Price Control Act.

The regulations of the Office of Price Administration ap-. plicable to this action are as follows:

Section 1399.1(c) provides that no person shall lease or furnish for use and no person in the course of trade or business shall rent or receive for use any construction equipment on a fully or partially operated basis at a price in excess of the maximum rental price established by this regulation.

Section 1399.5(a) requires that no person shall make or receive payment for any operating and maintenance service unless the maximum charge therefor has been established as therein provided.

Section 1399.6 provides: "If any construction or road maintenance equipment is leased on a 'fully operated' or similar basis, whereby the consideration to be paid represents payment both for the rental of such equipment and any operating and maintenance service, or services, the consideration paid shall not exceed the aggregate of the maximum rental price provided by this regulation for such equipment and the maximum charge established with, or by, the Office of Price Administration, Washington, D. C., for such service, or services, and the lessor shall separately itemize on his invoices his charges for rental and his charges for services."

Section 1399.12(a)(5)(i) defines "operating and maintenance service" to be "the supplying, by a lessor of construction or road maintenance equipment, in connection with the rental thereof, of any or all of the following services or supplies, required in the operation of such equipment: Operator, mechanic, oiler, fuel, oil, lubrication, repairs (other than repairs due to normal wear and tear), parts and any other services incidental thereto."

Section 1399.12(a)(9) reads as follows: "(i)'Bare' basis refers to any lease, contract, or understanding (except such as is described in (iii) below), regardless of whether the same is denominated a rental agreement, or forms a part of another agreement, whereby one party undertakes to furnish another party with any construction or road maintenance equipment, without supplying any operating and maintenance services required in connection therewith, for any use and for any consideration, regardless of how such consideration is determined.

"(ii) 'Fully operated' basis refers to any lease, contract, or understanding (except such as is described in (iii) below), regardless of whether the same is denominated a rental agreement, or forms a part of another agreement, whereby

one party undertakes to furnish for the use of, or use for, another party any construction or road maintenance equipment and to supply all operating and maintenance services required in connection therewith, for any purpose and for any consideration, regardless of how such consideration is determined. 'Partially operated' basis refers to the same sort of lease, contract or understanding as aforesaid, except that the party furnishing the equipment does not supply all, but only some, of the operating and maintenance services required in connection therewith.

"(iii) Neither of the foregoing definitions embrace, nor does this regulation apply to, a situation wherein the party furnishing to or using for another party any construction or road maintenance equipment is, pursuant to the terms of a written contract and according to the laws of the State where the work is to be performed, an independent contractor, liable to the other contracting party only for a particular result in respect to such work and is not subject to the control of such other party as to the means or methods by which such result is to be accomplished."

Appellants contend that because the contract provides that respondent shall furnish (1) the equipment, (2) the operators for its full maintenance, and (3) the laborers for emptying cement into the mixermobile skips the contract is within the provisions of section 1399.6 of the regulations, which refers to construction equipment that is "leased" on a "fully operated" basis as the latter term is defined in section 1399.12(a)(9)(ii). This argument ignores the provision of section 1399.12(a)(9)(iii) which provides that neither the definitions in subdivisions (i) and (ii) nor the regulations apply where the party furnishing construction equipment is, "pursuant to the terms of a written contract and according to the laws of the State where the work is to be performed, an *independent contractor,* liable to the other contracting party only for a particular result in respect to such work and is not subject to the control of such other party as to the means or methods by which such result is to be accomplished."

■ The contract in question is not covered by any of the foregoing regulations. It did not provide for either the leasing or the furnishing of construction equipment (§ 1399.1(c)), nor for operating and maintenance service (§ 1399.5(a)), nor for leasing on a "fully operated" or

other basis and did not provide for payment for rental of equipment or for operating or maintenance service (§ 1399.6). Respondent did not supply operating or maintenance service in connection with rental or otherwise (§ 1399.12(a) (5) (i)) and its contract was not on a "bare" basis or on a "fully operated" basis (§ 1399.12(a) (9) (i) and (ii)).

Respondent was an independent contractor, liable to Robbins & Larkey "only for a particular result" (§ 1399.12(a) (9)(iii)), to wit, the mixing of the concrete according to the specifications in the contract between Robbins & Larkey and L. F. Dow Company, Incorporated, which in turn was governed by the contract between the last-named company and the War Department. Respondent was not subject to the control of Robbins & Larkey as to the means or methods by which the result was to be accomplished. (Id.) The contract therefore was not embraced within the definitions contained in the regulations and respondent was subject neither to the provisions of the Emergency Price Control Act nor to any of the regulations adopted pursuant thereto.

■ The judicial definition of an independent contractor, as well as that contained in the regulations above quoted, includes respondent. "An independent contractor is one, who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work. . . . A contractor, obviously, is one party to a contract or one who has contracted to do or perform certain work." (*Chapman* v. *Edwards,* 133 Cal.App. 72, 76 [24 P.2d 211].)

Respondent was required by its contract not only to furnish equipment, laborers and operators but to mix the concrete to be placed in floor slabs, which was understood to be 10,000 cubic yards, for the agreed price of $15,120, and in addition was to receive a stated sum per cubic yard of concrete to be mixed for wall forms and all other concrete required which was not included in the floor slabs.

As prescribed by its contract, respondent delivered the necessary equipment on the premises, furnished operators and provided laborers for the maintenance and operation of the machines and for the mixing of concrete for the floor slabs and for the extra work consisting of wall forms and other required construction.

■ The court made a finding that the machinery and equipment used by respondent in the mixing of the con-

crete was not subject to the control or direction of any of the appellants and that respondent at all times had sole, complete and exclusive control of the means or methods by which the concrete was prepared and mixed and of the result to be accomplished. The evidence sustaining this finding was not contradicted in any particular.

The contract in question bears no resemblance to a lease. It contains no reservation of rent; the owner of the equipment, respondent, did not agree to and did not divest itself of possession; Robbins & Larkey never had possession of the equipment; no rental was specified; no term was fixed. ■ A provision for the payment of rent (*Mann* v. *Mann,* 141 Cal. 326, 330 [74 P. 995]) and of a transfer of use and possession of property to the hirer (*Entremont* v. *Whitsell,* 13 Cal. 2d 290, 297 [89 P.2d 392]) are essential elements of a lease. ■ If the provisions of an instrument show an intention on the part of one party to dispossess himself of the property and of the other to enter and hold in subordination to the title of the first party it is a lease. (*Morris* v. *Iden,* 23 Cal. App. 388, 393 [138 P. 120]; *Williams* v. *Miller,* 68 Cal. 290, 293 [9 P. 166].) A lease usually implies an instrument by which the exclusive possession of property is given for a limited period. (*Coney Island Co.* v. *McIntyre-Paxton Co.,* (C.C.A. 6) 200 F. 901, 908 [119 C.C.A. 197]; *Delaware, L. & W. R. Co.* v. *Sanderson,* 109 Pa. 583 [1 A. 394, 395, 58 Am.Rep. 743].)

■ Appellants contend that the language contained in the last paragraph of the contract requires us to construe the instrument as a lease. That paragraph recites that it was anticipated and understood that the pouring of concrete would be completed within approximately 30 days. Nevertheless, respondent agreed to furnish and maintain the equipment for a period of not to exceed 50 days and thereafter it was to receive a "standby charge of $150.00 per day for each day the equipment" should be retained by Robbins & Larkey. Neither this clause nor the use of the term "retained" means that the latter were at any time to have possession or control of the machinery. To determine the character of the instrument its entire contents, not just one paragraph or provision, must be considered and given full effect. The only rational construction of this provision, giving consideration to the entire contract and to the conversation preceding its execution, to which we shall refer later, is that

although the parties considered 30 days to be sufficient for the completion of the work, respondent would, if delays rendered it necessary, maintain the equipment on the job without charge for 20 additional days, but if for any reason there should be a further delay respondent would not be required to retain the machinery on the job for more than 50 days without being compensated therefor in addition to the contract price. There is nothing in the provision referred to that indicates that the equipment was to pass out of respondent's possession or into the control of Robbins & Larkey, and there is nothing that transforms the instrument into a lease. It contains none of the elements to which we have referred that are necessary to constitute a lease. The provision for a daily charge while the equipment was "retained" by Robbins & Larkey does not signify that respondent was to part with possession of the machinery. The language simply defines the termination of the period estimated to be necessary for the completion of the work and the date after which extra payment was to be made if the equipment should be *detained*, required to remain, on the job for a longer time.

■ Such ambiguity as appellants have attempted to inject into the contract by their argument, though none is present, has been dispelled by the uncontradicted evidence that when Robbins & Larkey and a representative of respondent discussed the renting of the equipment a proposal was made to rent it to them on a bare rental basis whereby respondent would have had no responsibility other than for the time the machines were out of the latter's possession. Robbins & Larkey rejected the proposal and stated that they would prefer to enter into a contract whereby respondent was to do all the necessary work to produce the concrete, including the operation of the batching plant. Thereupon the contract was executed. Such evidence would not have been admissible for the purpose of altering the terms of the written contract and was not offered for that purpose. It was presented and received with the sole object of explaining a purported ambiguity that seems to have arisen at the time of the trial in the minds of counsel and the court. For that purpose it was admissible. (*Kenney* v. *Los Feliz Inv. Co., Ltd.*, 121 Cal.App. 378, 386 [9 P.2d 225] ;*Walsh* v. *Walsh*, 18 Cal.2d 439, 444 [116 P.2d 62].)

The finding of fact that the contract is not a lease is sustained both by the language of the instrument itself and by the explanatory evidence.

■ Appellants contend that the interpretation of the contract by the District Price Attorney of the Office of Price Administration, written long after the completion of the work and while respondent was endeavoring to collect its compensation, to the effect that the agreement was a "fully operated" lease as defined in the regulations should be accepted by the court as controlling. Although a departmental ruling is entitled to consideration it is without force when it is contrary to the express language of the contract concerning which the ruling is made and when the instrument needs no interpretation other than that appearing on its face, or, if the contract be susceptible of more than one interpretation, its meaning and the intention of the contracting parties are made clear by the evidence.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.