[No. B045711. Second Dist., Div. Seven. Apr. 25, 1991.]

SANTA MONICA RENT CONTROL BOARD, Plaintiff and Appellant, v. IRENE BLUVSHTEIN et al., Defendants and Respondents.

COUNSEL

Anthony Trendacosta and Ralph H. Goldsen for Plaintiff and Appellant.

Gordon P. Gitlen for Defendants and Respondents.

OPINION

WOODS (Fred), J.—Plaintiff Santa Monica Rent Control Board (Board) appeals from an order dismissing its second amended complaint (SAC) after a demurrer was sustained without leave to amend. Since we agree with the trial court's finding that the Board cannot state a cause of action, we affirm.

FACTUAL AND PROCEDURAL SYNOPSIS

A. *Introduction*

On August 3, 1988, the Board filed a complaint against respondents[1] as individuals and doing business as 808 5th Street Trust and others.[2] On April 6, 1989, the Board filed the SAC, the pleading relevant to this appeal. The SAC contains causes of action for: (1) exemplary damages for violation of the Ellis Act (Gov. Code,[3] § 7060 et seq.); (2) injunctive relief to compel compliance with the Ellis Act; and (3) injunctive relief against unfair business practices pursuant to the Unfair Practices Act. (Bus. & Prof. Code, § 17000 et seq.)

B. *Allegations of The SAC*

1. *The Parties*

The Board is a public agency created by the Santa Monica City Charter and vested with authority to administer and enforce article XVIII of that

---

[1]Unless otherwise indicated, respondent refers to the individual respondents.

[2]Other defendants named in the various complaints were either not served, dismissed, or are not parties to this appeal.

[3]Unless otherwise indicated, all statutory references are to the Government Code.

charter (the Rent Control Law). The Rent Control Law applies to all residential rental housing in the City of Santa Monica except those units specifically exempted. The Rent Control Law regulates rent levels, evictions and removals of rental units from the housing market.

On or about February 22, 1988, respondents Bluvshtein, Ballardo, Volovich, Michael and Margaret Giventer, Chebettchian, Boyadjiev, and Leon and Sofya Teytelboym purchased residential rental property in Santa Monica located at 808 5th Street, holding title as tenants in common or joint tenants. 808 5th Street Trust is the fictitious business name of a general partnership in which each respondent is a partner.

## 2. *The First Cause of Action*

In May of 1988, respondents took administrative action to invoke their rights under the Ellis Act to cease operating the property at 808 5th Street as residential rental property. In conformity and compliance with that administrative process, respondents evicted tenants who occupied eight of the ten units in the subject building.

Shortly after evicting the former tenants, respondents occupied various units at the subject property as their personal residence pursuant to an oral agreement, whereunder each respondent granted to the other respondents a terminable right of exclusive possession of said unit in consideration for each occupant's contribution of a sum of money toward purchase and ongoing maintenance of the property.

The SAC alleged that the oral agreement created a landlord-tenant relationship between the respondents, which constituted a reentry into the rental housing market within the meaning of Board regulation 16006(b), which provides for recovery by the Board of exemplary damages where a property withdrawn pursuant to the Ellis Act reenters the rental housing market within a year after its withdrawal.

## 3. *The Second Cause of Action*

The SAC alleges that respondents failed to comply with Board regulation 16005(a), which required them to reoffer the units withdrawn from the rental housing market to the tenants displaced by said withdrawal.

## 4. *The Third Cause of Action*

Pursuant to Business and Professions Code section 17204, in the capacity of "any person," the Board sought injunctive relief against numerous unfair

business practices allegedly committed by respondents for violation of the Ellis Act, the Subdivision Map Act (§ 66410 et seq.), the Subdivided Lands Act (Bus. & Prof. Code, § 11000 et seq.), the Rent Control Law, and provisions of the Santa Monica Municipal Code relating to tract maps and permits to withdraw units from the rental housing market.

## C. *The Court's Ruling*

The Court sustained the demurrer without leave to amend and ruled that:

1. No violation of the Ellis Act was or could be alleged.

2. The third cause of action failed to state a cause of action because the Board did not have standing to bring that cause of action and had not been authorized to do so by the district attorney as the statute required.

3. No cause of action was or could be stated.

## CONTENTIONS

Since we address each cause of action individually, we list appellant's contentions.

1. The Board has standing to enforce the antiabuse provisions of the Ellis Act.

2. Respondents, who owned a multi-unit residential property as tenants in common, formed a landlord-tenant relationship with one another and rented portions of the subject property such that their use of the property violated the Ellis Act restrictions regarding the rerental of withdrawn rental property.

3. Appellant has standing to seek injunctive relief against unfair business practices.

4. Inconsistency in allegations of a complaint is not a proper ground for sustaining a demurrer without leave to amend.

## DISCUSSION

### I. *Standard of Review*

"In reviewing an order sustaining a demurrer without leave to amend, 'the allegations of the complaint must be liberally construed with a

view to attaining substantial justice among the parties.' [Citation.] If it is reasonably possible that plaintiff can cure a defective complaint by amendment, or that the pleading liberally construed can state a cause of action, the trial court should not sustain a demurrer without leave to amend. [Citation.] However, a trial court does not abuse its discretion by sustaining a general demurrer without leave to amend if it appears from the complaint that under applicable substantive law there is no reasonable possibility that an amendment could cure the complaint's defect." (*Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481, 486 [229 Cal.Rptr. 324, 723 P.2d 64].)

## II. *The First and Second Causes of Action Do Not Allege Any Violation of the Ellis Act*

### A. *History of rent control legislation applicable in Santa Monica*

In 1979, in response to a severe rental housing shortage, the City of Santa Monica adopted an initiative measure adding to the city charter article XVIII dealing with rent control. (*Nash* v. *City of Santa Monica* (1984) 37 Cal.3d 97, 100 [207 Cal.Rptr. 285, 688 P.2d 894].) In 1984, the Supreme Court upheld the constitutionality of section 1803(t) of the Rent Control Law which required a landlord to obtain a permit in order to remove a controlled rental unit from the rental housing market. (*Id.*, at pp. 99, 109.)

In response to the *Nash* decision, effective July 1, 1986, the Legislature passed the Ellis Act, which provides in relevant part that no public entity "shall, by statute, ordinance, or regulation, or by administrative action implementing any statute, ordinance or regulation, compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease." (§ 7060, subd. (a).) The Legislature stated its intent "to supersede any holding or portion of any holding in Nash . . . to the extent that the holding, or portion of the holding, conflicts with this chapter, so as to permit landlords to go out of business." (§ 7060.7.)

In 1986, the Board adopted its chapter 16 regulations, which were intended to implement the anitiabuse provisions of the Ellis Act. (Board reg. 16000.)

In 1988, the Court of Appeal held that the Ellis Act preempted sections 1803 and 1806 of the Rent Control Law as those sections applied to prevent landlords from evicting tenants in order to go out of the residential housing business absent permits from the City and the Board. (*City of Santa Monica* v. *Yarmark* (1988) 203 Cal.App.3d 153, 157 [249 Cal.Rptr. 732]; *Javidzad* v. *City of Santa Monica* (1988) 204 Cal.App.3d 524, 526 [251 Cal.Rptr. 350].)

## B. The alleged violation of the Ellis Act

The first and second causes of action of the SAC seek exemplary damages and injunctive relief respectively for alleged violations of the Ellis Act.

The SAC alleges that respondents had an oral agreement to purchase the property as tenants in common or joint tenants. According to that agreement, each respondent "would receive a terminable right of exclusive occupancy of specified units for a specified period of time not in excess of a year, with right of renewal, in consideration for (1) contributing a sum of money towards the purchase of the property, (2) making periodic payments thereafter to the partnership known as 808 5TH STREET TRUST or other collective entity for the purpose of meeting expenses and mortgage payments common to the property, and (3) relinquishing their right of possession with respect to all units except their own."

According to the SAC, respondents created a collective entity (the 808 5th Street Trust) to function as landlord and through that entity continue to rent each and every unit to each other.　Appellant argues that the oral agreement created a landlord-tenant relationship between respondents and constituted a reentry into the rental housing market within the meaning of Board regulation 16006(b), which provides that: "If withdrawn units are offered for rent or lease within one year of the date of withdrawal, the Board may bring an action in a court of competent jurisdiction for exemplary damages for displacement of tenants . . . ."

The second cause of action alleges that respondents also failed to comply with Board regulation 16005(a), which provides that: "If withdrawn units are offered for rent or lease within one year after their withdrawal, the owner of such units shall first offer the units for rent or lease to the tenants displaced from the units by the withdrawal, . . ." As a remedy for that failure, appellant sought an injunction to compel compliance with the regulation.

Thus, though couched as violations of the Ellis Act, as appellant concedes, it was actually alleging that respondents violated Board regulations 16005(a) and 16006(b). Appellant states that these regulations were duly adopted under authority conferred by the Ellis Act. (§§ 7060.2 & 7060.5.)

Assuming arguendo that the Board regulations are valid, the question becomes whether or not respondents reentered the rental market by offering the property for rent within one year.　Appellant's contention that the Ellis Act was violated rests solely on an argument that the oral agreement suffices to establish a landlord-tenant relationship as

respondents received the exclusive right to occupancy for periodic contributions to a common fund or partnership and that respondents rented to each other as there was a hiring of real property pursuant to Civil Code sections 1925 and 1940 since the distinguishing characteristic of a landlord-tenant relationship is the right of exclusive occupancy of a residential rental unit.[4]

Initially, the oral agreement did not establish a landlord-tenant relationship. ██ "The landlord-tenant relationship is created by a contract between the parties. This contract, known by a variety of names, may be oral or written and express or implied. [Citations.] The contract must show (expressly or from the facts) that the parties intend to create a landlord-tenant relationship [citations] and must contain the following: a designation of the parties, a description of the premises, the rent to be paid, the time and manner of payment, and the term for which the tenant will rent the property." (Cal. Residential Landlord-Tenant Practice (Cont.Ed.Bar 1986) § 1.1, p. 3.)

██ "A lease, as ordinarily understood, is an agreement whereby the relation of landlord and tenant is created. It imports the giving, for a consideration by the owner of the greater estate, of the possession and use of a lesser estate in his property with a reversion to the owner of the greater estate at the end of the term." (*Stone* v. *City of Los Angeles* (1931) 114 Cal.App. 192, 198-199 [299 P. 838].)

██ Whether the oral agreement is a lease is a question of law arising out of the construction of the agreement. (Cf. *Von Goerlitz* v. *Turner* (1944) 65 Cal.App.2d 425, 429 [150 P.2d 278].) ██ The oral agreement here is not a lease as it neither evidences an intent to create a landlord-tenant relationship nor provides for the payment of rent.

Provisions for the payment of rent and a transfer of use and possession of property are essential elements of a lease. (*Coop. Bldg. Materials* v. *Robbins & Larkey* (1947) 80 Cal.App.2d 832, 839 [183 P.2d 81].) ██ "If the provisions of an instrument show an intention on the part of one party to

[4]Although in opposition to respondents' demurrer and alleged in the SAC, appellant asserted that respondents violated Board ordinance 1466, which took effect on March 16, 1989, by not obtaining specific land-use permits for residential rental property which had been withdrawn from the rental market pursuant to the Ellis Act, this alleged violation was not raised on appeal. An amended complaint based on the same facts relates back to the original complaint. (*Nelson* v. *Nevel* (1984) 154 Cal.App.3d 132, 142 [201 Cal.Rptr. 93].) Since that ordinance was enacted after the original complaint was filed, affected substantial rights, and contains no indication that it was intended to be retroactive, it is not applicable to this case. (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 495, pp. 685-687.)

dispossess himself of the property and of the other to enter and hold in subordination to the title of the first party it is a lease." (*Ibid.*)

 Although appellant alleges that respondents purchased the property as tenants in common and gave up possession of units other than their own, such an action is not the normal dispossession of property by one party and possession by a second party in subordination to the title of the first party. The SAC does not allege that the 808 5th Street Trust owned the property nor does it designate the parties as landlord and tenant. Besides not evidencing an intent to form a landlord-tenant relationship, the oral agreement is not an agreement to pay rent.

Appellant claims that cotenants may rent to one another and that respondents rented the property from each other. Although a cotenant may agree to pay rent to another cotenant (*Nevarov* v. *Nevarov* (1953) 117 Cal.App.2d 581, 585 [256 P.2d 330]), respondents did not agree to pay rent. "Rent is the consideration paid by the tenant for the use, possession and enjoyment of the demised premises." (*Granberry* v. *Islay Investments* (1984) 161 Cal.App.3d 382, 389 [207 Cal.Rptr. 652].) "The lease or rental agreement should clearly specify the amount and manner of rent payment." (Cal. Residential Landlord-Tenant Practice, *supra*, § 1.16, p. 25.)

For income tax deduction purposes, rent is defined as "payments required to be made as a condition to the continued use or possession, for purposes of the trade of business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity." (26 U.S.C. § 162(a)(3).)

 The oral agreement did not specify the amount of or manner of payment of rent. Furthermore, the payments to be made were for the mortgage and maintenance of the property, not for use and possession. Since the payments were for title and maintenance, they were not payments for rent.

We conclude that oral agreement was not a lease, but rather was a purchase agreement setting up a method for making mortgage payments and collecting maintenance fees from the owners of the units. Thus, since no landlord-tenant relationship was effectively pled, the property was not offered for rent so that there was no violation of provisions of the Ellis Act section 7060.2, subdivision (a) or of the Board regulations 16005(a) and 16006(b), all of which pertain to reentry into the rental market.

In view of the above, we need not address whether appellant has the authority to enforce provisions of the Ellis Act as opposed to regulations enacted pursuant to authority in the act.

III. *Appellant Has No Standing to Seek Injunctive Relief Against Unfair Business Practices*

The third cause of action alleges numerous violations of various public laws in the guise of unfair business practices, and appellant seeks an injunction to compel compliance with those laws pursuant to Business and Professions Code section 17204 in the capacity of "any person."

The Unfair Practices Act provides that actions for injunctions may be pursued by certain designated governmental agencies or by a private person. Business and Professions Code section 17204 provides that:

"Actions for injunction pursuant to this chapter may be prosecuted by the Attorney General or any district attorney or any city attorney of a city having a population in excess of 750,000, and, with the consent of the district attorney, by a city prosecutor in any city or city and county having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members, or the general public."

The Unfair Practices Act defines "person" as "natural persons, corporations, firms, partnerships, joint stock companies, associations, and other organizations of persons." (Bus. & Prof. Code, § 17201.) ■ Appellant is a government agency; it is none of the things included in the definition of person. Therefore, it has no standing to bring an action for an injunction pursuant to the Unfair Practices Act, and the demurrer to the third cause of action was properly sustained.

Since appellant cannot state a cause of action under the Ellis Act or the Unfair Practices Act, we need not address appellant's contention regarding the inconsistency in pleading that respondents were tenants and that they were owners of the subject property.

## DISPOSITION

The order of dismissal is affirmed. Respondents to recover costs on appeal.

Lillie, P. J., and Kalin, J.,* concurred.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.