Filed 10/25/23  Fitness International v. Cole LA Riverside CA CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FITNESS INTERNATIONAL, LLC, | |
| Plaintiff and Appellant, | G062740 |
| v. | (Super. Ct. No. CVRI2101805) |
| COLE LA RIVERSIDE CA, LP, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Riverside County, Carol A. Greene, Judge.  Affirmed.  Requests for judicial notice.  Granted.

Dorsey & Whitney, Bryan M. McGarry, Lynnda A. McGlinn, Jill A. Gutierrez and Jessica M. Leano; Ellenoff Grossman & Schole and Bryan M. McGarry for Plaintiff and Appellant.

Buchalter, Artin Betpera, Robert M. Dato, Robert S. McWhorter and Jarrett Osborne-Revis for Defendant and Respondent.

This case involves a commercial lease dispute between appellant Fitness International, LLC (Fitness) and respondent Cole LA Riverside CA, LP (Cole) arising out of the COVID-19 pandemic. Fitness appeals summary judgment entered in favor of Cole on Fitness's complaint which sought, inter alia, to recoup rent payments made under protest for periods during which government orders prevented Fitness from operating its indoor health and fitness facility. According to Fitness, the trial court overlooked evidence which created a triable issue of fact as to a variety of its contentions, including breach of contract, impossibility, impracticability and frustration of purpose. On the record before us, we conclude otherwise and affirm the judgment.

## FACTS

Fitness is an operator of indoor health club and fitness facilities throughout the United States. In 2008, Fitness and Cole's predecessor in interest entered into a 15-year real property lease agreement (the lease) concerning an approximately 50,000 square foot commercial space (the premises). Fitness agreed to pay monthly rent.

Pursuant to the lease terms, Fitness was required to open and operate a health club and fitness facility for one day. Thereafter, it could continue such operations, pivot to a different use not prohibited by the lease or in conflict with the landlord's relevant exclusive use agreements, or cease operations entirely.

After the completion of various improvements to the premises, Fitness opened its health club and fitness facility in 2010. It continued the same use until events leading to the parties' present dispute took place.

In March 2020, California Governor Gavin Newsom proclaimed a State of Emergency in California due to the threat of COVID-19. In the following weeks, Governor Newsom issued multiple related executive orders. One limited residential and commercial evictions for non-payment of rent, while expressly not relieving a tenant of the obligation to pay rent or restricting a landlord's ability to recover rent due. Another directed all California residents to stay home or at their place of residence, with certain

2

exceptions, and directed all non-essential businesses to immediately stop operating. Non-essential businesses included gyms and fitness centers.

With operation of its health club and fitness facility temporarily illegal, Fitness ceased operations at the premises. Over the course of the following year, as the global pandemic unfolded, Fitness was periodically allowed to reopen its doors to the public for brief periods of time and at limited capacity. It was eventually able to return to normal operations.

The parties communicated concerning the pandemic's impact on Fitness's rent payments. Fitness believed certain contract provisions and legal doctrines excused rent during the mandatory closure periods. Cole disagreed. Ultimately, Fitness paid under protest the full amount of rent due, reserving all rights and remedies with respect thereto.

Fitness sued Cole to recover rent paid for all periods during which Fitness was legally prevented from operating its health club and fitness facility. Among other things, the first amended complaint alleged breach of contract, frustration of purpose, impossibility, and impracticability. It also relied on Civil Code section 1511, subdivisions (1) and (2)[1], as grounds for the requested return of monies paid.

Cole moved for summary judgment on the complaint. It argued each of Fitness's causes of action failed as a matter of law. Fitness opposed the motion, asserting alternative interpretations of the relevant lease language and contending there were triable issues of fact as to whether it was excused from paying rent during the closure periods under section 1511 and the alleged equitable doctrines.

The trial court agreed with Cole and entered judgment in its favor. Fitness timely appealed following entry of judgment.

---

[1] All further statutory references are to the Civil Code, unless otherwise indicated.

3

**DISCUSSION**

Fitness contends the trial court erred in concluding there is no triable issue of material fact as to any of its causes of action. It claims there are factual disputes to resolve concerning whether it was excused from paying rent during the COVID-19 closure periods based on lease provisions, equitable doctrines and codified common law doctrines. We disagree. On the record before us, each of Fitness's claims fails as a matter of law.

I. *Summary Judgment Principles and Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) A summary judgment motion must be granted "'if all the papers submitted show' that 'there is no triable issue as to any material fact' . . . and that the 'moving party is entitled to a judgment as a matter of law.'" (*Ibid.*, citations omitted.)

"[T]he trial court's stated reasons for granting summary judgment 'are not binding on us because we review its ruling, not its rationale.'" (*Johnson v. Open Door Community Health Centers* (2017) 15 Cal.App.5th 153, 157.) "'We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion. [Citation.]" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) Credibility determinations, the weighing of evidence, and resolving factual disputes are not proper matters. (*Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 161; *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 880; *AARTS Productions, Inc. v. Crocker National*

4

*Bank* (1986) 179 Cal.App.3d 1061, 1065.) We affirm the summary judgment if correct on any of the grounds asserted in the moving party's motion. (*American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728, 747-748.)

II. *Breach of Contract*

Fitness contends summary judgment on its breach of contract claim was error because the trial court misinterpreted the lease's force majeure provision, failed to account for extrinsic evidence offered by Fitness which created a triable issue of material fact concerning the force majeure provision, and incorrectly concluded Cole did not breach a purported warranty made in the lease. We disagree with each of these claims.

We begin with force majeure. Section 22.3 of the lease provides: "If either party is delayed or hindered in or prevented from the performance of any act required hereunder because of strikes, lockouts, inability to procure labor or materials, retraction, after receipt of documentary approval, by the governing authorities of the Building Permit or any of the Required Project Entitlements, failure of power, riots, terrorism, insurrection, war, fire, inclement weather or other casualty (except casualty attributable to the party claiming the same shall not constitute a Force Majeure Event) or other reason of a similar or dissimilar nature beyond the reasonable control of the party delayed, financial inability excepted (each, a 'Force Majeure Event'), subject to any limitations expressly set forth elsewhere in this Lease, performance of such act shall be excused for the period of delay caused by the Force Majeure Event and the period for the performance of such act shall be extended for an equivalent period (including delays caused by damage and destruction caused by such Force Majeure Event). Delays or failures to perform resulting from lack of funds or which can be cured by the payment of money shall not be Force Majeure Events."

Fitness asserts the force majeure provision should be read to excuse both parties' performance of lease obligations during the COVID-19 closure time periods. So

its argument goes, the entire purpose of the lease was "for Fitness to have the right *to operate* the [p]remises as an indoor gym." The COVID-19 pandemic, along with the resulting closures and restrictions, constituted a force majeure event which temporarily hindered or prevented the fulfillment of that fundamental purpose. Accordingly, the obligations of both parties were excused during the closures.

While there is little doubt the COVID-19 pandemic significantly impacted the business and personal lives of those in the United States and around the world, we are obligated to focus on the negotiated language of the parties memorialized in the lease. (See *Healy Tibbitts Constr. Co. v. Employers' Surplus Lines Ins. Co.* (1977) 72 Cal.App.3d 741, 748 [paramount rule governing contract interpretation is to give effect to mutual intent of parties, which is derived in first instance from language of contract].) The plain terms of the lease reveal the weaknesses of Fitness's argument.

The force majeure provision temporarily excuses performance of a required act which is hindered, delayed or prevented by a qualifying event. Here, Fitness is trying to claim its rent obligation was excused. However, it does not argue the COVID-19 pandemic and the resulting closures impacted its ability to fulfill that obligation. The evidence demonstrates the opposite. Fitness was able to pay, and in fact paid, all rent due for the disputed time periods. (See *Fitness International, LLC v. KB Salt Lake III, LLC* (Sept. 26, 2023, B320562) __ Cal.App.5th __ [p. 24](*KB Salt Lake*) [rejecting application of similar force majeure provision because tenant had funds to pay rent despite COVID-19 closure orders]; *West Pueblo Partners, LLC v. Stone Brewing Co., LLC* (2023) 90 Cal.App.5th 1179, 1188 [rejecting application of similar force majeure provision because no evidence tenant's ability to pay rent was delayed, interrupted or prevented by COVID-19].)

Contrary to Fitness's assertion, nothing in the lease requires Fitness to operate an indoor gym throughout the lease's term. Although it required Fitness to initially open for business as a health club and fitness facility, that requirement only

6

applied for one day.  Thereafter, Fitness could continue with the same use, cease its operations, or engage in any other use permitted by the lease.

Even assuming, arguendo, Fitness was required to operate an indoor gym on the premises and the COVID-19 closures impacted its ability to do so, it does not follow that the force majeure provision would excuse payment of rent.  Based on the provision's plain language, the act delayed or prevented by the qualifying event is the act temporarily excused.  Thus, under this hypothetical, the force majeure provision would have only excused Fitness from operating its gym.

Fitness cites to what it calls "extrinsic evidence," claiming it demonstrates the force majeure provision is reasonably susceptible to its urged interpretation.  There are three types of offered evidence:  (1) a lease agreement for a different premises to which Fitness is party; (2) court decisions from other states interpreting force majeure provisions in other contracts[2]; and (3) Fitness's communications to Cole and payment of rent in protest following the closure orders.  We are not persuaded.

"Extrinsic evidence is admissible to prove a meaning to which the contract is reasonably susceptible. . . .  [¶]  The threshold issue of whether to admit the extrinsic evidence—that is, whether the contract is reasonably susceptible to the interpretation urged—is a question of law subject to de novo review." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 (*Founding Members*).)

Our charge in interpreting the lease is to determine the objective mutual intent of the parties at the time of contracting.  (§ 1636; *Bank of the West v. Superior*

---

[2]     Fitness requests we take judicial notice of various orders and judgments issued by courts in other states, as well as a document filed by Fitness in one of the cases. We grant the request, with the understanding we take judicial notice of the existence of the documents, not the truth of the matters contained therein.  (Evid. Code, §§ 452, subd. (d)(2), 459; *O'Neill v. Novartis Consumer Health, Inc.* (2007) 147 Cal.App.4th 1388, 1405.)

7

*Court* (1992) 2 Cal.4th 1254, 1264; *Founding Members, supra*, 109 Cal.App.4th at pp. 955-956.) The language of a force majeure provision in a different lease to which Cole and its predecessor-in-interest are not parties sheds no light on the parties' intentions in this case. The same is true for Fitness's actions after the closures occurred. Those actions are not the typical objective "course of conduct" actions which possibly aid in interpreting a contract; rather, they are subjective actions taken in the face of an inevitable and pending controversy. (See *Crawford v. Continental Cas. Co.* (1968) 261 Cal.App.2d 98, 103 ["The parties are less liable to have been mistaken as to the intention of their contract during the period while harmonious and practical construction reflected that intention than they are when subsequent differences have impelled them to resort to law and one of them seeks a construction at variance with the practical construction they once placed on it" (internal quotations omitted)].)

Regarding decisions from courts of other states, Fitness provides no support for its claim that those decisions can constitute extrinsic evidence capable of revealing an ambiguity in the lease language. (Cf. *KB Salt Lake, supra*, __ Cal.App.5th __ [p. 26, fn. 8] [rejecting use of other court holdings interpreting different contracts as extrinsic evidence to resolve claimed ambiguity in language of relevant contract].) Instead, as both Cole and Fitness elsewhere recognize, the decisions are only relevant to the extent we find them persuasive. (*Lebrilla v. Farmers Group, Inc.* (2004) 119 Cal.App.4th 1070, 1077 ["Decisions of the courts of other states are only regarded as 'persuasive . . . depending on the point involved'"].) And we are not persuaded. The focus of the plain language of the force majeure provision is the required act that is delayed or prevented by the qualifying event. The undisputed evidence demonstrated Fitness's rent obligation simply was not delayed or prevented by the COVID-19 pandemic or the related closures.

Fitness next argues there is a triable issue of material fact concerning whether Cole was required to, but failed to, indemnify Fitness pursuant to a purported

8

warranty in the lease. It relies on two lease provisions. Section 1.9 of the lease provides, in relevant part: "The 'Initial Uses' of the Premises shall be for the operation of a health and fitness facility . . . . Tenant shall have the right throughout the Term to operate the Premises, or any portion thereof, for uses permitted under this Lease." Section 2.2 of the lease provides, in relevant part: "Landlord shall indemnify, defend and hold harmless Tenant from and against any and all losses, demands, claims, liabilities. damages, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) arising as a result of any inaccuracy or breach of any representation, warranty or covenant of Landlord set forth in this Lease." According to Fitness, Cole warranted Fitness would have the right to operate the premises as an indoor gym, that became inaccurate when COVID-19 restrictions forced Fitness to cease its gym operations, and the inaccuracy triggered the indemnification provision.

The lease evidences the identified statements in section 1.9 are neither warranties nor covenants nor representations, as those terms were used by the parties. Throughout the lease there are many locations where "Landlord warrants" or "Landlord represents" or "Landlord covenants" something, including elsewhere in section 1.9. No such language is used in the provisions identified by Fitness. In these circumstances, the absence indicates the parties did not intend the indemnification obligation to run to the specified portions of section 1.9, and Fitness offers no evidence of an intended different meaning.

For the first time in its reply brief, Fitness appears to argue the right to operate conferred in section 1.9 is a bargained for right which, in breach of the lease irrespective of the indemnification provision, it did not receive during the closure periods. "'Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief . . . .'" (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158.)

Even if we were to consider the argument, it is without merit. The lease specified Fitness "shall have the right throughout the Term to operate the Premises . . . for uses permitted under this Lease." Elsewhere in the lease, Fitness provided a covenant to Cole it would "not use . . . the Premises . . . for any illegal purposes[.]" The closure orders temporarily made operation of Fitness's gym unlawful, meaning such use was not permitted by the lease during the closure periods. Accordingly, Fitness was not deprived of its right to operate the premises for permitted uses during those times.

### III. *Frustration of Purpose, Impossibility, and Impracticability*

Fitness contends there are triable issues of material fact regarding whether its obligation to pay rent during the closure periods was excused by the doctrines of frustration of purpose, impossibility and impracticability. We disagree. Under the facts presented, resort to these equitable doctrines is of no avail, as a matter of law.

Though historically separate doctrines, impossibility, impracticability and commercial frustration have similarities and overlap. ""A thing is impossible in legal contemplation when it is not practicable; and a thing is impracticable when it can only be done at an excessive and unreasonable cost." [Citation.]' [Citation.] This does not mean that a party can avoid performance simply because it is more costly than anticipated or results in a loss. [Citation.] Impracticability does not require literal impossibility but applies when performance would require excessive and unreasonable expense. [Citation.] Similarly, where performance remains possible, but the reason the parties entered the agreement has been frustrated by a supervening circumstance that was not anticipated, such that the value of performance by the party standing on the contract is substantially destroyed, the doctrine of commercial frustration applies to excuse performance." (*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1336.)

10

When the impossibility or impracticability are temporary, as opposed to permanent, the impact on performance is likewise temporary. Specifically, the duty to perform is only suspended while the temporary circumstances exist; it is not discharged or excused. (*Maudlin v. Pacific Decision Sciences Corp.* (2006) 137 Cal.App.4th 1001, 1017 (*Maudlin*).)

Here, there is no evidence of impossibility or impracticability as to Fitness's obligation to pay rent. Fitness has never argued the supervening COVID-19 pandemic closure orders made it such that payment of rent could only be done at an excessive and unreasonable cost. Tellingly, Fitness paid all the required rent. Thus, impossibility and impracticability do not apply. (See *SVAP III Poway Crossings, LLC v. Fitness Internat., LLC* (2023) 87 Cal.App.5th 882, 893-894 (*SVAP*) [rejecting impossibility and impracticability arguments because no evidence pandemic and related closures made it impossible to pay rent].)

As for commercial frustration, recent cases call into question whether temporary frustration is recognized by California law. (*KB Salt Lake, supra*, __ Cal.App.5th __ [p. 34]; *SVAP, supra*, 87 Cal.App.5th at p. 896.) We need not decide the issue because even assuming it is, Fitness has not met its burden of demonstrating a triable issue of fact under the circumstances.

Frustration, whether temporary or permanent, requires a showing that the value of the lease to the party claiming the frustration is totally destroyed or nearly totally destroyed. (*Lloyd v. Murphy* (1944) 25 Cal.2d 48, 53 (*Lloyd*); *SVAP, supra*, 87 Cal.App.5th at p. 896.) In exchange for payment of rent, a tenant in a leasehold generally receives the benefit of "the use, possession and enjoyment of the demised premises[,]" along with any other promises made or rights granted in the specific lease at issue. (*Santa Monica Rent Control Bd. v. Bluvshtein* (1991) 230 Cal.App.3d 308, 317; see *Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 322 [lease is the granting of "possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or

11

other consideration"].)  Thus, in the lease context, a tenant claiming frustration must demonstrate, inter alia, the circumstances have prevented the tenant from engaging in all allowable uses of the premises.  (*Lloyd, supra,* at pp. 53-54; *Grace v. Croninger* (1937) 12 Cal.App.2d 603, 606-607; *Davidson v. Goldstein* (1943) 58 Cal.App.2d Supp. 909, 911-912 (*Davidson*).)

Here, the lease did not limit Fitness to using the premises as an indoor health and fitness club.  Without seeking approval from Cole, Fitness could engage in a variety of ancillary uses including weight loss and nutritional advising, food and beverage service (e.g., juice bar, healthy or natural foods), and the sale of apparel, exercise or health related electronic media, vitamin and nutritional supplements, and other fitness related items.  And subject to Cole's option to terminate the lease, Fitness could pivot to a different primary use not excluded by the lease terms.  There is no evidence COVID-19 or the closures precluded Fitness from engaging in these alternative uses.

Fitness argues there is a triable issue of fact as to whether Fitness reasonably could have engaged in a different use at the premises.  It cites evidence it has only ever operated indoor health and fitness facilities during its 37-year existence, its employees are hired and trained for such an operation, its expertise lies in the indoor fitness industry, it has never changed the primary use of a leased premises, it would have lost the benefit of the $6 million it invested in improvements to the premises for indoor gym purposes, and it would have needed to invest additional time and money to make the premises suitable for an alternative use.  It also notes, pursuant to its membership agreement with customers, it could not have charged for fitness classes offered remotely via the internet or some other electronic means.

These facts, even if true, would not support a finding of commercial frustration.  "[L]aws or other governmental acts that make performance unprofitable or more difficult or expensive do not excuse the duty to perform a contractual obligation."

12

(*Lloyd, supra*, 25 Cal.2d at p. 55; see, e.g., *Davidson, supra*, 58 Cal.App.2d Supp. at p. 911 [rejecting frustration argument where government regulations did not impact portion of tenant's business even though continuing with business would probably be unprofitable].)

Fitness also received the benefit of possession of the premises during the closure periods. Such possession was valuable in at least two ways. One, Fitness was able to keep all its equipment and other personal property on-site, thereby avoiding the cost of moving and storing such property elsewhere. Two, Fitness was able to reopen its doors immediately when government orders were modified in a way that made its indoor gym operation allowable. "[F]rustration is no defense if . . . counterperformance remains valuable." (*Lloyd, supra*, 25 Cal.2d at p. 54.)

Finally, even assuming there was evidence of a total destruction or near total destruction of the value of the lease, a temporary frustration would at most suspend, but not discharge, a performance obligation. (*Maudlin, supra*, 137 Cal.App.4th at p. 1017, quoting Rest.2d, Contracts, § 269 [temporary impracticability or frustration].) Thus, once the circumstances giving rise to the temporary frustration ceased to exist, Fitness would have been obligated to pay the rent owed for the closure periods. (*Maudlin, supra,* at pp. 1017-1018.)

IV. *Civil Code Section 1511*

Fitness's final argument is its obligation to pay rent during the closure periods was excused by sections 1511(1) and 1511(2). These sections, which codify certain common law principles, do not excuse performance under the circumstances for reasons similar to those discussed above.

Section 1511(1) excuses a party's contractual obligation to perform if "performance . . . is prevented or delayed . . . by the operation of law." Section 1511(2) excuses a party's contractual obligation to perform if performance "is prevented or

delayed by an irresistible, superhuman cause."  Here, however, there is no evidence COVID-19 (the claimed superhuman cause) or the related government orders (the law) prevented or delayed Fitness's payment of rent.  The trial court correctly concluded Fitness's allegations relying on these statutory provisions failed as a matter of law.  (See *KB Salt Lake, supra*, __ Cal.App.5th __ [pp. 40-41] [reaching same conclusion based on same facts]; *SVAP, supra*, 87 Cal.App.5th at p. 894 [same].)

## DISPOSITION

The judgement is affirmed.  Cole is entitled to its costs on appeal.


DELANEY, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOTOIKE, J.


14