[Civ. No. 1137.   Third Appellate District.—November 29, 1913.]

JOHN MORRIS, Appellant, v. W. A. IDEN et al., Respondents.

LANDLORD AND TENANT—LEASE—FORM OF INSTRUMENT.—No technical or particular form of words is required in the formulation of a written lease. Whatever words show an intention on the part of the lessor to dispossess himself of the premises, and on the part of the lessee to enter and hold in subordination to the lessor's title, are sufficient.

ID.—CONTRACT TO CARRY ON DAIRY—WHETHER CONSTITUTES LEASE.—A written agreement which provides that the second party thereto "is to care for, milk, separate, feed hogs, cows, calves, and do all the work necessary to the success and cleanliness" of a certain dairy located on described land; that the first party "is to furnish all feed necessary to the success of said dairy, and keep on the premises" a certain number of cows, for which he is to receive one-third of the income of the dairy; that "the life of this lease is three years from date"; and that "it is agreed between the first and second parties to this lease that the second party must absolutely care for stock satisfactorily to first party and his failure to do so is a forfeiture on his part," constitutes a lease, rather than a contract of employment.

ID.—ASSIGNMENT OF LEASE—WHEN PERMISSIBLE.—Since such instrument is a lease, and not a contract for personal services, the lessee

is entitled to assign it if it contains no stipulation against assignment.

ID.—INJUNCTION AGAINST BREACH BY LESSOR—RIGHT OF LESSEE TO INVOKE.—If the lessor in such case, when only a little over two months of the term of three years of the tenancy has elapsed, advertises for sale the personal property mentioned in the lease, and thus threatens an act which, in view of the character of the business for which the property is to be used, will practically result in terminating the lease and so destroying the rights of the lessee's assignee, the assignee is entitled to the protection of the injunctive jurisdiction of a court of equity.

APPEAL from a judgment of the Superior Court of Tulare County and from an order sustaining a demurrer to the complaint. J. A. Allen, Judge.

The facts are stated in the opinion of the court.

H. B. McClure, for Appellant.

C. L. Russell, for Respondents.

HART, J.—This is an appeal by the plaintiff from a judgment entered upon an order sustaining a demurrer to the complaint.

The complaint, which is verified, alleges that the defendant, W. A. Iden, and one G. S. Mattos, on the eleventh day of July, 1912, at the county of Tulare, state of California, entered into the following agreement:

"Tulare, California, 7-12-12.

"This Agreement made and entered into this 11th day of July, 1912.

"Between W. A. Iden of Tulare, California; the party of the first part, and G. S. Mattos of Tulare, California; the party of the second part, witnesseth:

"That G. S. Mattos is to care for, milk, separate, feed hogs, cows, calves, and do all the work necessary to the success and cleanliness of that certain dairy located on the Northeast quarter Section Seven, 21, 23, and W. A. Iden is to furnish all feed necessary to the success of said dairy, and keep on the premises the same number, not less than fifty, or a greater number of cows on said premises as may seem necessary to the success of same. As a remuneration for said second party, he

is to receive one-third of the income of said dairy, including hogs, calves and butter fat. The life of this lease is three years from date.

"Witness our hands this 11th day of July, 1912.

"Signed,  W. A. Iden.

"Signed,  G. S. Mattos.

"It is agreed between first and second parties to this lease that the second party must absolutely care for stock satisfactorily to first party and his failure to do so is a forfeiture on his part.

"W. A. Iden.

"G. S. Mattos."

In accordance with the terms of the foregoing agreement, so the complaint continues, said Mattos entered upon and took possession of the northeast quarter of section seven, in township twenty-one south, of range twenty-three east, M. D. M., and also took possession of all the personal property on said land, comprising the livestock and implements and equipments connected with and essential to the carrying on of the dairy business mentioned in said agreement.

The complaint further alleges that, on the nineteenth day of July, 1912, said Mattos "sold, assigned and transferred to plaintiff herein all his right, title and interest in and to said lease, and the real and personal property therein and hereinbefore described, and that ever since said last-named date said plaintiff has been and now is in the possession of the whole of said real and personal property under and by virtue of said lease," etc.

The complaint then charges "that defendants have advertised by publishing and posting notices that they will, commencing Wednesday, September 25, 1912, at the hour of ten o'clock A. M. sell at public auction to the highest bidder all the personal property hereinbefore described and mentioned in said lease and now in the possession of plaintiff, and plaintiff alleges that said defendants, and each of them, threatens and intends, on the twenty-fifth day of September, 1912, to sell the whole or a great portion of the personal property hereinbefore described and mentioned in said lease, and will thereby prevent and deprive plaintiff from the possession, use and increase thereof, and will cause plaintiff great and irreparable injury and damage in, that the taking away of

the possession of said personal property from plaintiff will deprive plaintiff of his rights under said lease, to receive the income from said dairy and his share in the increase of said cows, hogs and butter fat, and for which injury plaintiff has no plain, speedy or adequate remedy at law."

The relief asked for is that the defendants be temporarily restrained by injunction from selling, disposing of or otherwise interfering with the plaintiff's possession of the personal property referred to in said agreement and more particularly described in the complaint pending the determination of the issues tendered by the complaint, and that, "upon a final hearing, said injunction be made for the full term of said lease, and for such other and further relief as to the court may seem just and equitable, and for plaintiff's costs of suit herein."

The controversy involved in this appeal hinges entirely upon the determination of the nature, in legal effect, of the instrument pleaded in the complaint and above quoted.

It is the contention of the plaintiff that the said instrument is a lease of the premises described therein and of the personal property specifically mentioned in the complaint, said property, both real and personal, constituting a dairy and essential to the prosecution of the dairy business.

On the other hand, the defendants contend that said instrument merely involves a contract of employment—that is, that it was simply intended by the parties as evidence of the hiring of the plaintiff's assignor to perform certain services for the defendants during a stipulated period of time and for a stipulated compensation—and that, being for personal services, said agreement cannot be assigned, nor will injunction lie to prevent the violation of its covenants.

Counsel for the defendants, in his brief, states that, upon the filing of the complaint herein, the court below granted a temporary restraining order and a citation requiring the defendants to appear and show cause why the restraining order should not remain in force during the pendency of the action; that, pursuant to said order to show cause and after a hearing thereon, the court dissolved and vacated the temporary restraining order so issued and denied to plaintiff an injunction *pendente lite*. Counsel further states that, since the only relief which could have been afforded the plaintiff was by in-

junction, for which alone he sued, and any action which may now be taken could not have the effect of protecting or safeguarding the rights which he alleges the defendants threatened to violate, his proper remedy was in an appeal from the order dissolving the restraining order which had been issued and denying him an injunction pending the litigation. In other words, it is argued that, the restraining order having been ordered dissolved and an injunction *pendente lite* denied, and the plaintiff having failed to take an appeal from said order, nothing can now avail the plaintiff by a reversal of the judgment from which this appeal is prosecuted. But, conceding the soundness of the position thus urged by the respondents, an insuperable objection against the consideration of it by this court lies in the fact that there is not a word in the authenticated record indicating that a restraining order was ever issued by the court or that any hearing or proceedings involving a temporary restraining order or an injunction *pendente lite,* were ever had before or disposed of by the court. All this information comes solely from the brief of counsel, and obviously it cannot be considered as a part of the record of the case.

All that appear before us are the complaint, in which the plaintiff asks for a temporary and finally a permanent injunction, a demurrer to said complaint by the defendants and an order by the court sustaining the demurrer and judgment thereupon entered in favor of the defendants, and from which this appeal is taken. By this record alone, obviously, we must be guided in reaching a conclusion, and whether such conclusion, if it be in favor of the plaintiff, may or may not result in any practical advantage to him, or whether, upon the record as it was actually made up, the plaintiff could have invoked, so far as a hearing in this court is concerned, a more efficacious remedy than that presented here, are propositions as to which, so far as the decision by this court is itself concerned, we are not charged with any degree of solicitude.

The only question before us is whether the complaint states a cause of action for an injunction, and, as stated, this must be determined by a solution of the question whether the written agreement into which Mattos and Iden entered is a lease of the property described therein or a mere contract of hiring or employment.

We think the complaint states a cause of action, which is to say that the instrument or written agreement upon which the action is founded was intended by the parties to operate as a lease of the property therein mentioned.

No technical or particular form of words is required in the formulation of a written lease. "Whatever words show an intention on the part of the lessor to dispossess himself of the premises, and on the part of the lessee to enter and hold in subordination to the lessor's title, are sufficient." (18 Am. & Eng. Ency. of Law, p. 605, and cases cited in the footnotes.)

In the case at bar, while the written instrument set out in the complaint is not in the precise phraseology usual to leases or instruments demising real property, nevertheless it cannot, upon fair and reasonable construction, be held to mean anything else than that the "party of the first part," Mattos, is thereby authorized to enter upon and hold for a term of three years the possession of certain real and personal property, all said property constituting the equipments of a dairy business, and that for the use of said property he would return to the owner thereof certain stipulated compensation. It is true, as counsel for the defendants declares in support of his contention that the instrument is a mere agreement whereby the defendants employed the plaintiff's assignor to take charge of and conduct the dairy business, that the only language of the writing which refers to compensation relates to the "remuneration" of the plaintiff. But this provision of the instrument whereby it is covenanted that the plaintiff shall "receive one-third of the income of said dairy," etc., necessarily implies that the owner of the property is to receive two-thirds of such income. We then have before us an instrument which clearly shows the names of the contracting parties, the premises leased, the rental, and the term, an intention on the part of the owner of the property to dispossess himself of the premises, and, he having signed the lease and thus expressly accepted its terms, Mattos's intention to enter upon and hold possession in subordination to the owner's title. Thus it appears that all the essentials of a lease are present in the agreement. (*Dodd* v. *Pasch,* 5 Cal. App. 686, [91 Pac. 166] ; 18 Am. & Eng. Ency. of Law, p. 605; *Eastman* v. *Perkins,* 111 Mass. 35.)

Moreover, we find in the instrument language which, considered by the light of its entire context, may fairly and reasonably be held to involve a construction by the parties themselves of the agreement, and indicating what they intended its legal effect should be. The last clause of the instrument reads: "The life of *this lease* is three years from date." It is readily to be conceded, as counsel for the defendants contends, that the character of a legal instrument is not necessarily what the author of the instrument or the parties thereto may call it. For illustration, an instrument may characterize itself as a deed, whereas its language or terms may clearly disclose that it is a mere lease, and in that case, manifestly, its legal effect could not be extended beyond that of a lease, notwithstanding that the parties called it a deed. But the language referred to in the writing in this case becomes very significant when it is considered in connection with the fact, as shown by the complaint, that Mattos actually entered upon and took possession of the real and personal property mentioned in the agreement. Furthermore, the clause added to the instrument by the parties seems to leave little room for doubting that they intended that the word "lease" as used in the writing should bear its ordinary legal signification. Said clause, it will be observed, reads as follows: "It is agreed between the first and second parties to *this lease* that the second party must absolutely care for stock satisfactorily to first party and his failure to do so is a *forfeiture* on his part." Forfeiture of what? The defendants would doubtless reply: a forfeiture of the plaintiff's right under the agreement to remain in the employment of the defendants. But the word "forfeiture" is an inapt term by which we would ordinarily express or describe the penalty for violating the conditions upon which one may be employed to perform certain personal services. On the other hand, it is peculiarly applicable to and the one that is ordinarily used in a lease and like instruments in which are imposed upon the lessee certain conditions, the violation of which was intended to have the effect of forfeiting his rights under the lease and so terminating his tenancy before the expiration of the stipulated term. It is, therefore, the more reasonable to assume that, if the instrument was intended by the parties as a mere contract for the hiring of the services of Mattos, they would probably have expressly stipulated in the agreement that

failure on the part of Mattos properly to perform the services contemplated by the instrument, or his failure to give the personal property proper care or otherwise to conduct the dairy business properly and successfully, would operate to terminate his employment or the contract of employment. But, as before indicated, aside from these considerations, the general tenor of the agreement—the giving of possession to Mattos, the length of the term of the tenancy and the covenant as to the division of the profits between the parties—with sufficient clearness show that the agreement was intended by the parties as a lease of the property therein mentioned.

It follows from the foregoing view of the legal nature of the agreement that the discussion by counsel for the defendants of the nonassignability of the instrument, said discussion being based upon the theory that the writing constitutes only a contract for personal services, can have no application here. There is nothing in the lease itself which prohibits the assignment thereof by the lessee, hence he had a perfect legal right to assign it to the plaintiff. (Civ. Code, sec. 1044.)

But it is contended by the defendants that injunction will not lie to prevent the breach of the covenants of a lease by the lessor. This position is grounded upon the general rule that an injunction will not be granted "to prevent the breach of a contract, the performance of which would not be specifically enforced" (Civ. Code, sec. 3423), and that a contract not entirely executed by one of the parties will not be enforced unless it is *mutually enforceable*. (*Vassault* v. *Edwards,* 43 Cal. 465; *Lattin* v. *Hazard,* 91 Cal. 87, [27 Pac. 515]; *Cooper* v. *Pena,* 21 Cal. 404.) We believe, however, that the present case comes within the exception to the general rule which has been recognized in many cases. But a little over two months of the term of three years of the tenancy had elapsed when the defendants advertised for sale the personal property mentioned in the lease and thus threatened to do an act which, in view of the character of the business for which the property was to be used, would practically result in terminating the lease and so destroying the rights of the plaintiff thereunder. Obviously, the plaintiff was without a complete and adequate remedy in the ordinary course of law, for it would be impossible, under the circumstances to estimate, except by mere conjecture, the damage he would suffer if the trespass threat-

ened by the defendants was consummated. Upon this ground he is entitled to the protection of the injunctive jurisdiction of a court of equity, notwithstanding the want of that mutuality in the contract necessary to authorize the specific enforcement of its terms. In *Gallagher* v. *Equitable Gas Light Co.,* 141 Cal. 699, [75 Pac. 329], and in other cases therein cited, the right to an injunction in a certain class of cases to prevent the violation of contracts which cannot be specifically enforced is distinctly recognized and put upon the ground of a want of an adequate remedy at law. Besides, the act of the defendants, in offering the property for sale, involved an act which, if consummated, would amount to a trespass, and it cannot be doubted that the remedy by injunction may be invoked to restrain acts or threatened acts of trespass in any instance where as here, it is made to appear that such acts may result in irreparable damage to the particular property involved. (*Kellogg* v. *King,* 114 Cal. 378, [55 Am. St. Rep. 74, 46 Pac. 166] ; *Schmaltz* v. *York Mfg. Co.,* 204 Pa. 1, [93 Am. St. Rep. 782, 59 L. R. A. 907, 53 Atl. 522] ; *Ex parte Warfield,* 40 Tex. Cr. 413, [76 Am. St. Rep. 724, 50 S. W. 933].)

The judgment is reversed, with directions to the trial court to overrule the demurrer.

Chipman, P. J., and Burnett, J., concurred.