[S. F. No. 16283. In Bank.—November 21, 1939.]

LAWRENCE G. BECKETT, Plaintiff and Appellant, v. CITY OF PARIS DRY GOODS COMPANY (a Corporation), Defendant and Appellant.

Dinkelspiel & Dinkelspiel and David K. Lener for Plaintiff and Appellant.

Dean Cunha, Daniel R. Shoemaker and Harry I. Stafford for Defendant and Appellant.

EDMONDS, J.—In this case, the court is called upon to determine whether a contract made by the parties is a lease or only a license to occupy certain property. The plaintiff recovered damages for unlawful eviction, but the trial judge refused to allow certain amounts claimed and each of the parties has appealed from the judgment.

The defendant agreed in writing with the plaintiff, who is an optometrist, that the latter might, for a period of three years, conduct a first-class optical department in its large store. The space to be occupied at any time was to be designated by the defendant, which was to supply all light, heat, water, telephone and elevator service. Dr. Beckett agreed to furnish equipment, fixtures and show-cases conforming in style and finish with those used in the store, and to pay it twenty per cent of his total monthly sales as consideration for the right to do business upon the conditions stated. It was further stipulated that all money taken in by Dr. Beckett should be deposited with the cashier of the City of Paris at the end of each day, and that the latter would later render a statement to him showing the balance of his account after deduction of amounts chargeable to him for rental, advertising, and uncollectible bills.

By the terms of the contract Dr. Beckett was required to purchase merchandise in his own name and upon his own credit, and he agreed to provide liability insurance indemnifying the store against liability arising because of his negligence or that of his employees. Other provisions are that he "cannot assign this lease or any interest therein" without the written consent of the dry goods company and that "on the last day of the term created hereby", he will "forthwith quietly and peaceably surrender and yield up unto the . . . [department store] any occupied premises".

Following the execution of this agreement, Dr. Beckett took possession of several rooms designated by the City of Paris and occupied them for more than two years. The store then notified him that it was cancelling the agreement because of asserted violation of the provision requiring the deposit of receipts with its cashier, and it requested that he vacate on the evening of December 7th. This date was later postponed for three weeks, but immediately thereafter all of the plaintiff's instruments and merchandise were taken out of his rooms and he was excluded therefrom.

The department store contends that its agreement gave Dr. Beckett only a license to use the premises, and that the contract could, therefore, be terminated for just cause at any time. In support of its position, the defendant points out that no definite space was set apart for Dr. Beckett to occupy, and that it was given control of his business in matters of advertising policy and the keeping of accounts. By the terms of the contract, Dr. Beckett also agreed to discharge any employee who should "become objectionable" to the store. Under these circumstances, says the City of Paris, it is obvious that the parties intended the optical department to be an integral part of the store which Dr. Beckett had only a license to manage and operate; hence it had the right to terminate that license at any time and to exclude him from the premises.

█ A lease is both a contract and a conveyance; under such an agreement there are rights and obligations based upon the relationship of landlord and tenant as well as upon the contractual promises. (*Realty & Rebuilding Co.* v. *Rea,* 184 Cal. 565 [194 Pac. 1024] ; *Samuels* v. *Ottinger,* 169 Cal. 209 [146 Pac. 638, Ann. Cas. 1916E, 830] ; Tiffany, Landlord and Tenant, sec. 16.) It is well recognized that no particular legal terminology is required in the making of a lease, but it is essential that the instrument show an intention to establish the relationship of landlord and tenant. (*Baranov* v. *Scudder,* 177 Cal. 458 [170 Pac. 1122] ; *Morris* v. *Iden,* 23 Cal. App. 388 [138 Pac. 120].)

█ Although Dr. Beckett agreed to conduct his business in accordance with the policy of the store, to do his billing through the company's office, to discharge employees who were objectionable to the company, and to cooperate in other

matters, there are other provisions in the agreement which
definitely point to an intention that the relationship between
them should be that of lessor and lessee. For example, the
agreement provides that "the designated space shall be de-
livered to second party in good, tenantable condition", and
that Dr. Beckett shall have "the sole and exclusive right to
conduct the optical department". It also bound Dr. Beckett,
in terms common to leases, "to pay as a monthly rental a
sum equivalent to twenty per cent (20%) of the total monthly
sales of said department". Also, not only do the parties
use the term "lease" in their agreement but the provision
which forbids assignment without the consent of the depart-
ment store is not applicable to a license, which is "a personal,
revocable and unassignable permission to do one or more acts
on the land of another without possessing any interest therein.
. . . A license, because it is personal, is incapable of being
assigned by the licensee". (*Eastman* v. *Piper,* 68 Cal. App.
554 [229 Pac. 1002].)

Moreover, throughout the whole instrument, rights are given
and language is used which definitely indicates that a lease
was intended. The phrases "good, tenantable condition",
"cannot assign this lease", "space demised", and "monthly
rental" are the terminology of a lease. The use of these
words is not conclusive of intention (*Morris* v. *Iden, supra*)
but strongly indicates that the parties contemplated such a
relationship. Nor does the retention by the store of a cer-
tain amount of control over the management of the optical de-
partment, or the requirement that Dr. Beckett adhere to the
rules and regulations governing its operations, negative this
intention.

■ A lease must include a definite description of the
property leased and an agreement for rental to be paid at
particular times during a specified term. (*Losson* v. *Blodgett,*
1 Cal. App. (2d) 13 [36 Pac. (2d) 147].) Yet, where one
goes into possession of premises under a contract containing
an ambiguous or uncertain description of property to be
occupied and pays the stipulated rent, it will be enforced as
a lease if the parties acted upon it as relating to particular
premises. (*Baranov* v. *Scudder, supra; Merchants' Nat.
Bank* v. *Weston,* 34 Cal. App. 693 [168 Pac. 587].)

■ When the litigants made their contract, they stated only that "the space to be occupied by said [optical] department at any time" was to be designated by the City of Paris, and "shall be delivered to . . . [Dr. Beckett] in good tenantable condition". This provision is not inconsistent with the requirements of a lease and in cases which have arisen under facts strikingly similar to those in the present controversy it has been held that an agreement under which an owner of real property allows another to conduct his own separate business in a stall or section of a store or lot creates the relationship of landlord and tenant rather than licensor and licensee. (*Herman* v. *Rohan,* 37 Cal. App. 678 [174 Pac. 349] ; *Smith* v. *Royal Ins. Co.,* 93 Fed. (2d) 143; *In re Owl Drug Co.,* 12 Fed. Supp. 439.)

■ Both parties agree that if the agreement is a lease, violations of the requirement for all money received to be turned in at the end of each day are not sufficient to justify a forfeiture of it. This is the correct construction of their contract and the plaintiff is, therefore, entitled to recover upon his cause of action for eviction.

■ Passing to a consideration of the points presented by Dr. Beckett upon his appeal from the judgment, he first challenges the conclusion of the trial judge concerning the amount of his actual damages. It is undisputed that during the year immediately preceding his eviction, his average monthly earnings were $259.61. As he was evicted three months before the expiration of his lease, he is entitled to the sum of $778.83 for loss of profits instead of $666 allowed as actual damages. Also, the defendant does not deny that Dr. Beckett expended $35 for the removal of his furniture and equipment. This sum is recoverable by him. (*Klein* v. *Lewis,* 41 Cal. App. 463 [182 Pac. 789].)

■ Another contention of Dr. Beckett is that he is entitled to damages for loss of good will. Although such damages may be recoverable under certain circumstances (*Landon* v. *Hill,* 136 Cal. App. 560 [29 Pac. (2d) 281] ; *Risdon* v. *Hotel Savoy Co.,* 99 Wash. 616 [170 Pac. 146]), there is no evidence in the present case to support an award therefor. Dr. Beckett testified to a loss of business following his eviction but there is nothing to indicate that this decrease was caused by the eviction.

He also urges his right to exemplary damages. However, such damages are recoverable only "where the defendant has been guilty of oppression, fraud, or malice, express or implied" (sec. 3294, Civ. Code), and whether there has been such conduct is always a question for the trial judge or the jury to decide upon the evidence in the particular case. Although the acts of the department store's employees in connection with the eviction of Dr. Beckett were somewhat extreme, the finding that Dr. Beckett should not recover exemplary damages is conclusive upon this court under the evidence as a whole.

The judgment is therefore modified by adding the sum of $147.83 to the amount of $666 for which damages were awarded and as so modified the judgment is affirmed, the appellant Lawrence G. Beckett to recover costs on appeal.

Carter, J., Gibson, J., Houser, J., Waste, C. J., Curtis, J., and Shenk, J., concurred.