Filed 2/7/24  Vertical Web Ventures v. Arrowhead Lake Assn. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VERTICAL WEB VENTURES, INC. et al., | |
| Plaintiffs and Respondents, | G062727 |
| v. | (Super. Ct. No. CIVSB2120604) |
| ARROWHEAD LAKE ASSOCIATION et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of San Bernardino County, Gilbert G. Ochoa, Judge.  Affirmed.  Appellant Arrowhead Lake Association's Request for Judicial Notice.  Granted in part and denied in part.  Respondents' Request for Judicial Notice.  Denied.

Best Best & Krieger, Scott W. Ditfurth, Gregg W. Kettles and Dustin J. Nirschl for Defendant and Appellant Arrowhead Lake Association.

Law Office of D. Wayne Leech and D. Wayne Leech for Defendants and Appellants Gary Clifford, Robert Mattison, Alan B. Kaitz, Eran Heissler, Anthony O'Keefe and Christopher Wilson.

ArentFox Schiff, John P. Zaimes, Sara T. Schneider, Jessica B. Do and Neil M. Soltman for Plaintiffs and Respondents.

\*　　　　\*　　　　\*

In 1964, the development company that owned Arrowhead Lake (Lake), along with the entity that owned the Lake's shoreline, entered into an agreement granting the surrounding Arrowhead Woods community property owners "[t]he right for themselves, their lessees and houseguests" access to and use of the Lake and its surrounding area for recreational activities (1964 Agreement or "64 Agreement"). The 1964 Agreement also provided the owners of the Lake and shoreline the right "to promulgate and enforce reasonable regulations designed to promote the safety, health, comfort, and convenience of persons in or upon the Lake or in the vicinity thereof with respect to the conduct of such activities."

In 1975, defendant Arrowhead Lake Association (Association) acquired the Lake and shoreline and has since functioned to manage operations and improvements on and around the Lake. In 2020, in response to the short-term rental market's "internet-fueled gold rush," the Association amended its bylaws to bar all short-term renters, defined as a person who rents a home in Arrowhead Woods for less than a 30-day-term, from accessing the Association's property. The Association similarly bars Arrowhead Woods property owners who are not members of the Association from Lake access.

Arrowhead Woods property owners Vertical Web Ventures, Inc., Jackie McKinley, Christopher Lee, and Seline Karakaya (collectively, plaintiffs) sued the Association and some of its directors and employees contending, inter alia, the bylaws amendment and the Association membership requirement for Lake access violate the terms of the 1964 Agreement. Shortly after initiating their lawsuit, plaintiffs filed a

2

motion for a preliminary injunction. In a 12-page ruling, the trial court granted the motion to the extent it sought to enjoin the Association from barring Lake access to short-term renters who qualify as lessees and to property owners who are not Association members.

We affirm. The trial court did not err by concluding plaintiffs established a likelihood of prevailing on the merits of claims premised on the contention the Association's amendment to its bylaws violated property owners' rights granted by the 1964 agreement. The trial court did not abuse its discretion by determining the harm plaintiffs would suffer unless the court issued a preliminary injunction outweighs the harm the Association and individual defendants would suffer from the imposition of a preliminary injunction.

## FACTS[1]

In 1964, the Arrowhead Woods Property Owners Association, the Lake Arrowhead Development Co., and the Arrowhead Mutual Services Co. entered into the 1964 Agreement "to determine and establish certain rights in the plaintiffs and the property owners of lands in Arrowhead Woods in the reserve strips [shoreline surrounding the Lake], reserve strip additions, and the Lake." The Agreement provided it was binding on all "successors, lessees and assigns of the parties."

The 1964 Agreement states in relevant part: "Development Co. and Service Co. hereby grant without warranty express or implied to all owners of lots in Arrowhead Woods which at any time heretofore have been owned by Service Co., Development Co., Los Angeles Turf Club, Inc., Arrowhead Lake Corporation or Arrowhead Lake Company, and to the successors and assigns of such owners, and subject to all recorded conditions, restrictions and reservations, the following non-exclusive

---

[1] This summary of facts is based on the facts cited by the trial court in its ruling on the motion for preliminary injunction.

3

rights, easements and servitudes in, over, upon and with respect to the reserve strips and reserve strips additions, and the Lake, viz:

"(a) The right for themselves, *their lessees and house guests* to use the strips for private park and reasonable recreational purposes, and for ingress and egress by foot travel, but not for commercial or business purposes; [¶] . . . [¶]

"(c) The right for themselves, their lessees and house guests to use the Lake for reasonable recreational purposes, including but not limited to boating, fishing, swimming and bathing, but not for business or commercial purposes, and subject to the rights expressed in paragraph 6 of this instrument,[2] and the right in Development Co. and Service Co. or either of them *to promulgate and enforce reasonable regulations* designed to promote the safety, health, comfort and convenience of persons in or upon the Lake or in the vicinity thereof with respect to the conduct of such activities." (Italics added.)

In 1975, the Association purchased the Lake and its shoreline (reserve strips). The Association was "formed with the specific purpose to 'provide nonprofit recreational facilities and activities on and around Lake Arrowhead, exclusively for the use and enjoyment of the owners of the real property in Arrowhead Woods, their families, and guests.'" The Association "does not own or control the real properties within Arrowhead Woods." Arrowhead Woods property owners are not required to belong to the Association. (Evidence was presented that only half of such property owners are Association members.)

In 2020, the Association amended its bylaws at article II, section C (Section C) to preclude access to the Association's property (the Lake and the reserve

---

[2] Paragraph 6 of the 1964 Agreement entitles the Lake's owners "to charge lot owners reasonable fees for permitting piers and docks to be located and kept on the strips . . . and/or the Lake" and to charge reasonable fees for "the licensing of boats to be used on the Lake and for rental slips."

strips) by short-term renters, defined as those who rent a home within Arrowhead Woods for less than 30 days.  The Association also took the position a person is not permitted access to the Association's property, even if an Arrowhead Woods property owner, unless that person is a member of the Association.

## PROCEDURAL HISTORY

### I.

#### THE FIRST AMENDED COMPLAINT

Plaintiffs filed a first amended complaint against the Association and individual defendants Gary Clifford, Robert Mattison, Alan B. Kaitz, Brian C. Hall, Eran Heissler, Anthony O'Keefe, and Christopher Wilson.[3]  The first amended complaint contains claims for breach of the 1964 Agreement, infringement of property rights, breach of the covenant of good faith and fair dealing, interference with easement, declaratory relief, injunctive relief, race and national origin discrimination, gender discrimination and harassment,[4] retaliation in violation of public policy, and private and public nuisance.  In the prayer for relief, plaintiffs request declaratory relief, injunctive relief, damages, and reasonable attorney fees.

### II.

#### PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

---

[3]  Defendant Hall did not appeal from the order granting the preliminary injunction.  We hereafter refer to Clifford, Mattison, Kaitz, Heissler, O'Keefe, and Wilson collectively as "the individual defendants."  We refer to the Association and the individual defendants collectively as "defendants."

[4]  The first amended complaint alleges the defendants' motivations in restricting access to the lake and the reserve strips "are entirely nefarious, and are grounded in racial and ethnic origin bias and misogyny."  Such allegations, which have been strongly disputed by defendants, are irrelevant to the issues of contractual interpretation presented in this appeal and are not further addressed in this opinion.

Plaintiffs moved for a preliminary injunction enjoining the Association, its employees, agents, and/or anyone acting on its behalf from: "1. Enforcing Article II, Section C of the [Association]'s Bylaws or any other regulation prohibiting Arrowhead Woods' guests and lessees from accessing Lake Arrowhead (the 'Lake') and its surrounding shoreline area ('Reserve Strips') as permitted by paragraph 3 of the 1964 Written Agreement entered into between the Arrowhead Woods property owners, the Lake Arrowhead Development Co., and Arrowhead Mutual Service Co. ('64 Agreement'); [¶] 2. Restricting Arrowhead Woods property owners, their guests and their lessees who are not members of the [Association] from accessing the Reserve Strips and the Lake permitted by paragraph 3 of the '64 Agreement; [¶] 3. Enforcing rules that violate paragraph 3 of the '64 Agreement by unreasonably and arbitrarily limiting the number of radio frequency identification ('RFID') cards issued to Arrowhead Woods property owners; [¶] 4. Enforcing rules that violate paragraph 3 of the '64 Agreement by unreasonably requiring Arrowhead Woods property owners to register their guests by name; [¶] 5. Permitting [Association] enforcement personnel to stop and demand that Arrowhead Woods property owners, their lessees, and their guests provide identification; [and] [¶] 6. Erecting any new fences or gates restricting access to the Lake and the Reserve Strips." Plaintiffs also prayed for an order that the Association "remove all new fences and gates and RFID access sensors installed in 2020 and 2021." The motion was based on the declarations of Karakaya and Doug Miller and plaintiffs' request for judicial notice.

Defendants filed oppositions to the motion for a preliminary injunction.

6

## III.

### THE TRIAL COURT GRANTS IN PART AND DENIES IN PART THE MOTION FOR A PRELIMINARY INJUNCTION

The trial court granted in part the motion for a preliminary injunction, stating: "IT IS HEREBY ORDERED that Defendant Arrowhead Lake Association . . . is enjoined from:

"1. Enforcing Article II, Section C of the [Association]'s Bylaws or any other regulation prohibiting Arrowhead Woods' vacation guests and lessees from accessing the Lake and the Reserve Strips as permitted by paragraph 3 of the '64 Agreement;

"2. Restricting Arrowhead Woods property owners, their guests and their lessees who are not members of the [Association] from accessing the Reserve Strips and the Lake as permitted by paragraph 3 of the '64 Agreement;

"Pursuant to Code of Civil Procedure § 529, Plaintiffs shall post a $100,000.00 bond. The Preliminary Injunction shall become effective upon securing Bond. This Preliminary Injunction shall remain in full force and effect until the earlier of the following occurs: (i) a final judgment is ordered in this action; or (ii) further Court order following a noticed motion or stipulation by the parties." Plaintiffs posted a surety bond.

The plaintiffs' motion was denied as to their requests for an order enjoining the Association from "[e]nforcing rules that violate paragraph 3 of the '64 Agreement" by "unreasonably and arbitrarily limiting the number of [radio frequency identification ('RFID')] cards issued to Arrowhead Woods property owners"; "unreasonably requiring Arrowhead Woods property owners to register their guests by name"; "[p]ermitting [the Association] enforcement officers to stop and demand that Arrowhead Woods property owners, their lessees, and their guests provide identification"; and "[e]recting any new fences or gates restricting access to the Lake and the Reserve Strips." The trial court also

denied plaintiffs' motion as to their request for an order requiring the Association to "remove all new fences, gates, and radio frequency identification ('RFID') access sensors installed in 2020 and 2021."

The Association and the individual defendants appealed; the plaintiffs did not appeal. The Association and the individual defendants have retained separate appellate counsel and have filed separate briefs in this appeal.

REQUESTS FOR JUDICIAL NOTICE

I.

WE GRANT IN PART AND DENY IN PART THE ASSOCIATION'S
REQUEST FOR JUDICIAL NOTICE

The Association has requested we take judicial notice under Evidence Code section 452 of (1) an Airbnb online form entitled "Terms of Service"; (2) a certified copy of the grant deed, recorded on December 11, 1935 in San Bernardino, which the Association contends is within McKinley's Arrowhead Woods property's chain of title; (3) legislative history of Civil Code section 1940 and former Government Code section 37101.1; and (4) the San Bernardino County Code of Ordinances chapter 84.28. Plaintiffs filed an opposition to the request.

A recorded deed is an official act of the executive branch, of which this court may take judicial notice. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).) We therefore grant the request to take judicial notice of the certified copy of the recorded grant deed.

Legislative materials underlying the enactment of a statute relevant to our analysis are appropriate matters for judicial notice on appeal. (Evid. Code §§ 452, subd. (c), 459, subd. (a); Cal. Rules of Court, rule 8.252(a).) For the reasons we explain *post*, the legislative history of Civil Code section 1940 and former Government Code section 37101.1 are not relevant to the resolution of the issues in this appeal. (Evid. Code, § 350.) We therefore deny the judicial notice request of the proffered legislative

8

history. For the same reason, we deny the request as to the Airbnb Terms of Service online form and as to portions of the San Bernardino County Code of Ordinances. (*Ibid.*)

II.

WE DENY PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

Plaintiffs filed a request pursuant to Evidence Code sections 452, subdivisions (c) and (h), and 459, and pursuant to rule 8.252 of the California Rules of Court, that we take judicial notice of the following: (1) Black's Law Dictionary's definition for the term "'lessee'"; (2) Black's Law Dictionary's definition for the term "'lease'"; (3) Miller and Starr's definitions for the terms "'lessee'" and "'lease'"; (4) the California Department of Real Estate's definition for "'guest'"; and (5) San Bernardino County Code of Ordinances sections 84.28.030, 84.28.040, 810.01.100, 82.04.040, and 82.05.040. We deny plaintiffs' requests for judicial notice as those documents are irrelevant to the resolution of the issues on appeal. (Evid. Code, § 350.)

DISCUSSION

I.

GOVERNING LEGAL PRINCIPLES AND STANDARD OF REVIEW

"""As its name suggests, a preliminary injunction is an order that is sought by a plaintiff prior to a full adjudication of the merits of [the plaintiff's] claim. [Citation.] To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that [the plaintiff] will suffer if an injunction is not issued pending an adjudication of the merits." [Citation.] "In deciding whether to issue a preliminary injunction, a trial court weighs two interrelated factors: the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction."' [Citation.]

"The ruling on a motion for preliminary injunction generally rests in the sound discretion of the trial court and will not be disturbed on appeal absent a showing of

abuse. [Citation.] "'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered'" [citation], or when the court's ruling 'is "so irrational or arbitrary that no reasonable person could agree with it"' [citation]." (*Iloh v. Regents of University of California* (2023) 87 Cal.App.5th 513, 522.)

"'[W]ith respect to questions of construction of statutes and contracts not involving assessment of extrinsic evidence, our standard of review is de novo.' [Citation.] ""[W]hen reviewing the interpretation and application of a statute where the ultimate facts are undisputed"' an appellate court exercises its independent judgment in determining whether issuance or denial of injunctive relief was proper.'" (*Western Growers Assn. v. Occupational Safety & Health Standards Bd.* (2021) 73 Cal.App.5th 916, 930.)

## II.

### PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

In their opening briefs, defendants challenge the trial court's ruling plaintiffs were likely to prevail in establishing Section C of the Association bylaws (excluding short-term renters from Association property) and the Association membership rule (barring non-Association members from Association property) violate the grant of rights to property owners and their lessees in the 1964 Agreement. For the reasons we explain, the trial court did not err.

A. *The Trial Court Did Not Abuse Its Discretion by Concluding Three Arrowhead Woods Property Owners Could Seek Injunctive Relief*

In their opening brief, the individual defendants preliminarily argue under the 1964 Agreement, "injunctive relief requires application by 3 Arrowhead Woods property owners" but "Plaintiffs have not submitted admissible evidence that at least 3 of them own real property in Arrowhead Woods, mandating that the preliminary injunction

10

be reversed." (Boldface omitted.) Section 4 of the 1964 Agreement provides in relevant part: "Any act or omission inconsistent with said easements and servitudes or any of them and any violation of breach of any right, condition and/or restriction expressed herein may be prevented by injunction and such remedy may be availed of by not less than three owners of lots or portions of lots in Arrowhead Woods."

The trial court addressed and rejected the argument this contractual prerequisite for seeking injunctive relief was not satisfied, stating: "Now, the individual Defendants argue Plaintiffs fail to establish they are owners in Arrowhead Woods. However, Miller attests that he is the owner of Plaintiff Vertical, and Vertical owns property in Arrowhead Woods since November 2017. . . . Similarly, Karakaya attests to owning property in Arrowhead Woods since 2018. . . . Her statement is verified by [the Association]'s RJN [(request for judicial notice)] of her Grant Deed. . . . Lastly, the [Association]'s RJN includes McKinley's Grant Deed showing she is also an owner in the Arrowhead Woods area. . . . There appears to be 3 owners."

The individual defendants mention in their opening brief the trial court overruled some of their evidentiary objections regarding "the Plaintiff's declarations regarding their ownership of property in Arrowhead Woods," but they do not argue, or discuss how, the trial court might have abused its discretion in overruling any such objections. They do not explain how the evidence cited by the trial court in support of its factual findings is insufficient to show three plaintiffs own property in Arrowhead Woods so as to satisfy the ownership requirement of section 4 of the 1964 Agreement required to seek injunctive relief. We find no error.

## B. Rules of Contract Interpretation

Review of the trial court's determination requires the application of the traditional rules of contract interpretation. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752.) "Accordingly, we first consider the mutual

11

intention of the parties at the time the contract . . . was formed.  (Civ. Code, § 1636.)  Our initial inquiry is confined to the writing alone.  (*Id.*, § 1639; [citation].)  ‘“The ‘clear and explicit’ meaning of these provisions, interpreted in their ‘ordinary and popular sense,’ unless ‘used by the parties in a technical sense or a special meaning is given to them by usage’ ([Civ. Code], § 1644), controls judicial interpretation.  (*Id.*, § 1638.)  Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.  [Citations.]”’  [Citations.]  At the same time, we also recognize the ‘interpretational principle that a contract must be understood with reference to the circumstances under which it was made and the matter to which it relates.  (Civ. Code, § 1647).’”  (*Ibid.*; see *Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 916 [“[t]he fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time they entered into the contract,” which “intent is interpreted according to objective, rather than subjective, criteria”].)

*C.  Overview of Relevant Caselaw Distinguishing Lessees, Tenants, and Lodgers*

Applying the rules of contractual interpretation in our review of the preliminary injunction, we, like the trial court, must determine what the parties to the 1964 Agreement meant in their use of the term “lessees.”  That term is not defined in the 1964 Agreement itself.

In *Beckett v. City of Paris Dry Goods Co*. (1939) 14 Cal.2d 633, 636, a case decided about 25 years before the 1964 Agreement, the California Supreme Court defined a lease as follows:  “A lease is both a contract and a conveyance; under such an agreement there are rights and obligations based upon the relationship of landlord and tenant as well as upon the contractual promises.  [Citations.]  It is well recognized that no particular legal terminology is required in the making of a lease, but it is essential that the instrument show an intention to establish the relationship of landlord and tenant.”  Citing *Beckett v. City of Paris Dry Goods Co.*, the appellate court in *O’Shea v. Claude C. Wood*

12

*Co.* (1979) 97 Cal.App.3d 903, 909–910 explained: "A lease must include a definite description of the property leased and an agreement for rental to be paid at particular times during a specified term. Where one goes into possession of the premises under a contract containing an ambiguous or uncertain description of property to be occupied and pays the stipulated rent, it will be enforced as a lease if the parties acted upon it as relating to particular premises."

"The chief distinction between a lodger and a tenant lies in the character of possession. A 'lodger' has only the right to use the premises, subject to the landlord's retention of control and right of access. A 'tenant' has exclusive legal possession of premises and is responsible for their care and condition. When premises are under the direct control and supervision of the owner and rooms are furnished and attended to by him, he or his servants retaining the keys, a person renting such a room is a lodger and not a tenant." (*Green v. Watson* (1964) 224 Cal.App.2d 184, 190, citing *Stowe v. Fritize Hotels, Inc.* (1955) 44 Cal.2d 416, 421 (*Stowe*).)

*D. The Trial Court's Ruling on Section C of the Association's Bylaws*

In its ruling, the trial court stated the first question presented by the motion for a preliminary injunction was whether Section C, which precludes all short-term renters access to the Association's property, runs afoul of the terms of the 1964 Agreement. The trial court concluded plaintiffs are likely to establish Section C breaches the 1964 Agreement for the following reasons:

"[T]he 64 Agreement provided access to the Lake and Reserve Strip by Arrowhead Wood owners, their lessees, and their houseguests. Does a lessee include a short-term renter? Plaintiffs contend it does. Defendants contend short-term renters are akin to hotel guests and are not, and reference that the County treats short-term renters as transients. But, the issue is not how the County defines short-term renters for purposes of regulating and licensing owners whose homes are used for short-term rentals. The issue

13

is the construction and meaning of lessee within the 64 Agreement at the time of the contract.  (Civ. Code, § 1636.)

"Under ordinary meaning, lessee means a person who has an agreement that allows the use of a house for a period in exchange for payment. . . .  A lease is a contract by which one conveys real estate, equipment, or facilities for a specified term and a specified rent. . . .

"*Based on the above definitions, a short-[term] renter is a lessee.*

"Now, case law makes a distinction between a tenant and lodger.  'A "tenant" has exclusive legal possession of premises and is responsible for their care and condition.  A "lodger" has only the right to use the premises, subject to the landlord's retention of control and right of access to them.  To make one a tenant, as respects an owner's liability for injuries sustained by [the] occupant on the premises, he must have exclusive possession and control.  [Citation.]  When premises are under the direct control and supervision of the owner and rooms are furnished and attended to by him, he or his servants retaining the keys to them, a person renting such a room is a lodger and not a tenant.  [Citation.]'  (*Stowe*[*, supra*,] 44 Cal.2d [at p.] 421.)

"Under *Stowe*, if the owner of the home had the right to access the house while the short-term renter was present or came in daily (like with a hotel) to clean up and make the beds, then the renter is a lodger.  But if the owner loses the right to access and control the home while the short-term renter is present and the short-term renter is responsible for the daily care of the home while in rent, then the short-term renter is a tenant.

"Applying that here, a short-term renter would fall under as a tenant versus a lodger.  The short-term renter obtains exclusive access to the home during the short-term stay with all obligations to maintain the premises during that stay.  The short-term lessees here are not lodgers at a bed and breakfast within the Arrowhead Woods.

14

"Additionally, the 64 Agreement does not limit the term of any lease. This would support the 64 Agreement contemplates any person who is allowed exclusive use of Arrowhead Woods' property for any period, regardless of how short that period may be, is a lessee.

"Defendants also contend the use by short-term renters equates to a business or commercial use that is precluded by the 64 Agreement. However, the fact a business or commercial transaction may exist between the Arrowhead Woods' property owner and the short-term renter in the transaction to rent the property that does not equate to the renter using the Lake or Reserve Strip in a commercial or business transaction.

"Because of the above, *Plaintiffs have a likelihood of establishing the preclusion of the* [*Association*] *and Individual Defendants of short-term renters from use of the Lake and Reserve Strip is a breach of the 64 Agreement*." (Italics in original.)

### E. Section C Broadly Bars Access to All Short-term Renters in Violation of the Terms of the 1964 Agreement

Plaintiffs argue the trial court correctly concluded short-term renters as defined in Section C qualify as lessees under the 1964 Agreement. Defendants contend short-term renters are never lessees, but lodgers, if not transients, who do not qualify for Lake access under the Agreement.

Section C of the Association's bylaws, entitled "Short Term Rentals" states: "The clients of [Association] members who rent their homes in Arrowhead Woods for less than a 30-day period ('Short Term Renters') cannot access Lake Arrowhead, the [Association] Beach Clubs, the [Association] trails, any other [Association] facility and/or any dock on Lake Arrowhead owned by any [Association] member renting a home in Arrowhead Woods to the Short Term Renter." Under Section C, those renters who are precluded from Lake access are determined solely by the length of their stay in Arrowhead Woods (i.e., less than 30 days). While the length of a renter's

15

stay might shed light on whether the renter is properly classified a lessee or a lodger/transient under the Agreement, defendants have not cited any legal authority contemporaneous with the 1964 Agreement, and we have found none, showing the length of a renter's stay is determinative of that classification.

Significantly, Section C does not distinguish between short-term renters who are given exclusive legal possession of premises and are responsible for their care and condition from those who have only the right to use the premises, subject to the landlord's retention of control over them. (See *Stowe, supra*, 44 Cal.2d at p. 421.) Nor does Section C differentiate between short-term rental agreements by which the property owner has the right to access the property "while the short-term renter was present" or to "c[o]me in daily (like with a hotel) to clean up and make the beds" from those by which the property owner loses the right to access the home while the short-term renter is present, vesting in the renter the responsibility for the daily care of the home "while in rent." Under Section C, Lake access would even be denied to a short-term renter who signed a lease, so long as the lease was for a duration of less than 30 days.[5]

Consequently, Section C casts a wide net. It is broadly written to deny Lake access to renters who enter rental agreements for a period of less than 30 days which otherwise contain terms entirely consistent with a lease, alongside short-term renters who may be properly characterized as lodgers or transients instead of lessees within the meaning of the 1964 Agreement. To the extent Section C denies access rights to renters in the former category, it breaches the 1964 Agreement's grant of such rights.

_____

[5] Like the trial court, we look to legal authority like *Stowe, supra*, 44 Cal.2d 416 that preceded the 1964 Agreement to discern the contracting parties' intent in using the term lessee in that agreement. In light of the dramatic changes that have taken place in the short-term rental market since that time and particularly in the last decade, we question how *Stowe* might be applied in characterizing short-term rentals in the present day. We do not reach this question because the issue presented in this appeal is limited to determining whether plaintiffs are likely to prevail on their breach of contract claims concerning the 1964 Agreement.

16

In its opening brief, the Association argues Section C does not violate the 1964 Agreement because it constitutes a reasonable regulation, as expressly authorized by the 1964 Agreement, "to promulgate and enforce reasonable regulations designed to promote the safety, health, comfort, and convenience of persons in or upon the Lake or in the vicinity thereof with respect to the conduct of such activities."  A rule stripping a category of individuals of their right under the 1964 Agreement to Lake access cannot be reduced to constituting a mere regulation designed to promote the safety, health, comfort, and convenience of the recreation activities of persons enjoying the Lake.  Otherwise, the power conferred under the Agreement for the Association (as a successor in interest to the contracting parties) to make reasonable regulations to promote Lake activities could be further used to deprive property owners, their long-term lessees, and their houseguests of their rights to enjoy the Lake themselves; such a "regulation" would not be reasonable in light of the 1964 Agreement's express grant of Lake and reserve strips access rights.

The Association also argues:  "Because a determination of whether an occupant is a lessee or lodger has a variety of implications, California courts apply one of two tests to determine occupant status.  California courts have more recently and consistently applied the length of stay test, particularly to determine tax treatment and occupant rights.  For instance, a tenant—unlike a lodger—is entitled to statutory notice before a landlord commences eviction proceedings.  (See, e.g., Code Civ. Proc., § 1161.)  Section 1161 excludes, as tenants, 'those persons whose occupancy is described in subdivision (b) of Section 1940 of the Civil Code.'  (Code Civ. Proc., § 1161, subd. (5).)  Section 1940, subdivision (b) expressly excludes 'transient occupancy . . . when the transient occupancy is or would be subject to tax under Section 7280 of the Revenue and Taxation Code' and '[o]ccupancy at a hotel or motel where the innkeeper retains a right to access and control . . .'  (Civ. Code, § 1940, subd. (b)(1), (2).)"

As discussed *ante*, this appeal does not present a question of statutory interpretation, but of contractual interpretation.  How California statutes define tenants,

17

lodgers, and transient occupants, without reference to the state of the law in 1964, is irrelevant to interpreting the contracting parties' intent as to the scope of those they intended to protect as "lessees" in the 1964 Agreement.

Civil Code section 1940 was not added until 1976, and Revenue and Tax Code section 7280, which authorizes a city and/or county to tax "the privilege of occupying a room . . . in a hotel, inn, tourist home or house, motel, or other lodging unless the occupancy is for a period of more than 30 days," was not effective until December 8, 1971. In its request for judicial notice discussed *ante*, the Association offered legislative history showing Revenue and Tax Code section 7280's predecessor (former Government Code section 37101.1), which contained essentially the same content as section 7280, was passed about a year before the 1964 Agreement. But there is nothing in the record to suggest the parties to the 1964 Agreement were aware of the new legislation permitting a tax on defined transient occupancy or that it had any effect on their intent in using the term "lessee" in the Agreement.

With regard to lodgers, Civil Code section 1946.5, subdivision (c) (added in 1986) provides: "As used in this section, 'lodger' means a person contracting with the owner of a dwelling unit for a room or room and board within the dwelling unit personally occupied by the owner, where the owner retains a right of access to all areas of the dwelling unit occupied by the lodger and has overall control of the dwelling unit." The statutory definition makes no reference to the duration of stay—which is Section C's sole criterion for excluding Lake access.

In its opening brief, the Association argues the trial court erred by refusing to take judicial notice of covenants, conditions, and restrictions (CC&R's) that applied to the property owned by plaintiff McKinley by virtue of a 1935 recorded grant deed. The Association argues the relevant portion of those CC&R's show they "barr[ed] transient uses" on McKinley's property and 100 other lots in Arrowhead Woods, quoting the CC&R's: "'[U]se [on the subject lots] is also limited by the specific condition that on

18

said premises no store, business or profession of any kind shall be maintained or carried on; that *no tenement house, hotel, boarding and/or lodging house*, or any cesspool, vault or privy shall be erected, built or used.'" (Italics in original.)

Even if the trial court erred by refusing to take judicial notice of the CC&R's, any error was harmless because the quoted portion of the CC&R's begs the question of what the parties to the 1964 Agreement intended the term "lessee" to mean in the context of the restrictions Section C imposes on renters who rent for less than 30 days. Nothing in the cited portion of the CC&R's suggests subject property owners were restricted from renting their homes for any particular duration of time, e.g., for a period less than 30 days. The portion of the CC&R's relied upon by the Association contains no temporal requirement in addressing permitted uses of the property.

In its opening brief, the Association also argues "[t]he emergence of internet sites like Airbnb and VRBO (Vacation Rentals by Owner) have led to many California homeowners operating their homes as short vacation rentals." It further argues: "The negative impacts of STRs [short-term rentals] have been documented in a number of judicial decisions reviewing local community efforts to regulate or outright prohibit STRs. The California cities of San Francisco, Buena Park, and Santa Monica found that ordinances banning or restricting STRs were justified in part to ensure the long term availability of housing stock. . . . The City of Carmel, California found that an ordinance restricting STRs was justified because STRs weaken community ties, and increase traffic, noise, and demand on parking and public services. . . . Santa Monica found that an ordinance banning STRs was justified in order to help preserve the 'cultural, ethnic, and economic diversity of its resident population.' . . . [¶] Communities throughout California have responded to the negative impacts of STRs. . . . Restrictions against STRs have been repeatedly upheld by the courts."

All but one of the cases cited by the Association in support of its argument involve a challenge to an ordinance passed by a local governing body. This appeal does

19

not address, much less affect, the ability of local government to address concerns surrounding the increasing popularity of short term rentals.

The Association cites *Mission Shores Assn. v. Pheil* (2008) 166 Cal.App.4th 789, 798 as an example of an appellate court upholding a homeowners association's "restriction on short term rentals enacted to 'ensure that the [residential community] property would not become akin to a hotel.'" (*Id.* at p. 795.) That case however is inapposite because it involved a challenge to the procedure requisite to amending a homeowners association's declaration of covenants, conditions, and restrictions. (*Id.* at p. 792.)

Citing an online copy of an Airbnb "Terms of Service" agreement (because some or all plaintiffs asserted they had used Airbnb in renting out their homes), the Association argues "[e]ven under the 'character of use' test, the Bylaw Amendment does not conflict with the 1964 Agreement." The Association argues the terms in the Airbnb agreement are not like those of a lease, as the terms of the former agreement refer to the "'Accommodation Reservation'" as "'a limited *license* to enter, occupy, and use the Accommodation'" and further state the property owner retains the right to re-enter the Accommodation under certain circumstances (including when it is reasonably necessary). (Italics added.)

The Association's argument is not supported by any evidence any plaintiff ever used that form service agreement or that any of the short-term renters of their homes were subject to similar terms. To the contrary, as the individual defendants in their opening brief acknowledge, "[p]laintiffs failed to provide any of their STR agreements to the Court, which they easily could have done, or present any facts in a declaration as to how their STR businesses operated."

We agree the record does not come close to containing a complete picture of the nature and terms of the short-term rental agreements entered into by plaintiffs or other property owners in Arrowhead Woods. The record does not show the variety of

20

such agreements or the extent to which short-term renters are more akin to lessees versus lodgers or transient occupants.  Additionally, the 1964 Agreement did not define the term "lessee," and established law at the time that agreement was entered requires a rather fact specific analysis for determining whether a particular renter is a lessee versus a lodger or transient.

A more developed factual record on the types of Arrowhead Woods short-term rental agreements is not necessary at this stage of the litigation for the resolution of this appeal.  As discussed *ante*, our review is limited to determining whether the trial court correctly concluded plaintiffs established a probability of prevailing on its claims based on breach of contract.  As Section C categorically bars all short-term renters from Lake access, regardless of the nature and non-temporal terms of their respective rental agreements, we agree with the trial court plaintiffs have succeeded in showing Section C, as written, breaches the 1964 Agreement by violating rights granted in it.


*F.  The Association's Membership Rule*

As to the Association's rule conditioning a property owner's Lake access on active membership in the Association, the trial court ruled:

"The [Association] is of the position that, unless a member, no access is allowed of its property even if an owner of an Arrowhead Woods property. . . .  The reason offered is because the [Association] can only enforce its safety rules, Bylaws, and governing documents against members. . . .

"The offered reason *may be reasonable* but is counter to the language of the 64 Agreement.  Again, the 64 Agreement provides all Arrowhead Woods' owners, their lessees, and their guests with the right to access and use, for recreational purposes, the Lake and Reserve Strip.  Nothing in such language indicates or requires the owner must first be a member of the organization holding title to the Lake and Reserve Strip.

21

"Defendants point to the [fact the] 64 Agreement provides the Lake and Reserve Strip owner may promulgate and enforce reasonable regulations to promote the health, safety, comfort, and convenience of persons in or upon the Lake or vicinity thereof with respect to the conduct of such activities. *But merely because the [Association] can promulgate rules and regulations is not going to equate to the right to exclude a person who otherwise has the contractual right of access.*

"To be clear, the fact a non-[Association] member but an Arrowhead Woods' owner, guest, or lessee is entitled to access the Lake and Reserve Strip does not mean they would be entitled to store a boat on the Lake, or use a boat on the Lake, or engage in illegal, business, or commercial activities in the area. It merely means the Arrowhead Woods' owners, guests, and lessees can access the Lake, trails, and beaches for recreational purposes.

"Thus, Plaintiffs have a likelihood of prevailing on [showing] the 64 Agreement [was] violated by the Defendants by precluding non-[Association] members but Arrowhead Woods' owners, guests, and lessees from accessing the Lake and Reserve Strip." (Italics in original.)

We agree with the trial court's reasoning and conclusion. The Association did not exist until 1974. Arrowhead Woods property owners are not required to join the Association and, according to plaintiffs, most do not.

Nothing in the 1964 Agreement conditions property owners' right to access the Lake and reserve strips upon the payment of a fee (the Association states "[m]embership may be had for as little as $105 per year") or the property owner's agreement to become a member of an organization that owns the Lake property. The 1964 Agreement provides for the owner of the Lake to charge a reasonable fee for permitting piers and docks to be located and kept on the reserve strips or the Lake, and a reasonable fee for licensing boats to be used on the Lake and for rental slips. It did not provide for further charges.

22

We agree the Association's membership rule cannot be construed as a reasonable regulation to promote the safety, health, comfort, and convenience of property owners enjoying the Lake. Plaintiffs therefore have demonstrated a probability of prevailing on claims based on a breach of the 1964 Agreement resulting from the Association's exclusion of property owners who are not Association members from access to the Lake and reserve strips.

III.

RELATIVE INTERIM HARM TO THE PARTIES

Balancing the relevant harm to the parties, the trial court ruled:

"Plaintiffs argue their relevant harm is the loss of the use and enjoyment of the Lake and trails for themselves and their guests and lessees. The breaches further infringe on their properties' value. . . . Irreparable harm can arise when a home's value is diminished or substantial loss occurs in the enjoyment of the home. [Citation.] Also, irreparable harm may be demonstrated by an act 'which is a serious change of, or is destructive to, the property it affects, either physically or in the character in which it has been held and enjoyed.' . . .

"Defendant [the Association] argues the relevant harm weighs in its balance because it operates on a budget primarily funded by members paying their [Association] dues. . . . Yet Defendant offers no evidence that by enjoining it from precluding those with a contractual right of access to the Lake and Reserve Strip means its income will decrease. The Court is not enjoining it from collecting dues or regulating boat slips and usage of boats on the Lake.

"In weighing precluding those who have a contractual right of access and use against a potentially affected budget, the harm weighs in Plaintiffs' favor.

"Defendant [the Association] also contended that by imposing the requested injunction, the character of the Lake is changed from private to public. But allowing those with the contractual right of access is not rendering the Lake open to the

23

public. It remains that the Lake is only accessible by the Arrowhead Woods' property owners, guests, and lessees.

"*Overall, the harm weighs in Plaintiffs' favor.*" (Italics in original.)

In its opening brief, citing a district court decision in Montana, the Association argues the trial court misapplied the law because it "incorrectly considered the rights of third parties who are strangers to this lawsuit." We disagree with the Association's argument. The 1964 Agreement contemplates property owners might choose to lease their homes or entertain houseguests. It is not speculation to conclude Section C's restriction of Lake access to renters who stay less than 30 days reduces the marketability of Arrowhead Woods rentals and thereby directly and negatively impacts property owners.

Neither the Association nor the individual defendants dispute the trial court's statement in its ruling no evidence shows the issuance of an injunction enjoining the Association from excluding short-term rental lessees and property owners who are not Association members from the Lake and reserve strips would result in a reduction in its income. We agree with the trial court's reasoning and conclude the court did not abuse its discretion in concluding the balance of relative harms favors issuance of the preliminary injunction.

## DISPOSITION

The order granting a preliminary injunction is affirmed. Respondents to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


GOETHALS, ACTING P. J.


DELANEY, J.